McBRIDE, Judge.
The plaintiffs, the assured and the loss payees under a mortgage clause, sue for the proceeds under a fire policy issued in Mississippi by defendant-insurer covering property located near Pass Christian, that state. The defendant excepted to the service of process made on the Secretary of State and pleaded the court’s lack of jurisdiction over the person of defendant and over the subject matter, and prayed for a summary judgment dismissing the suit “since there is no genuine issue of material fact.” The defendant, a foreign insurance corporation, is authorized to do and actually does business in Louisiana. The question to be answered is whether the local statutes dealing with jurisdiction over and citation upon foreign insurance corporations exclude such an action as the one involved, where the policy is issued in another state and the loss occurs in that other state. The exceptions were maintained below, and a summary judgment was granted in favor of defendant dismissing plaintiffs’ suit at their costs.
On March 26, 1965, another citation on defendant was attempted, and upon the sheriff returning he was unable to find anyone locally authorized to represent defendant upon whom service could be made, service was then made on the Secretary of State on March 30, 1965, the same day the judgment dismissing the suit was rendered.
Plaintiffs applied for a new trial, or alternatively a rehearing, and in the further alternative for a modification of the judgment of March 30, 1965. The application sets forth the fact of the second service; it is alleged the judgment of March 30, 1965, should be limited to quashing the previous service of process, and the question of the sufficiency and efficacy of the second citation should be left open for further adjudication. The court dismissed the rule for a new trial, and plaintiffs have appealed.
. The conceded facts regarding the issuance and acceptance of the policy are: Defendant is a New Hampshire corporation authorized to write fire policies in Mississippi; Giadrosich Insurance Agency is its agent in the Town of Pass Christian, that state. Defendant is also qualified to do and does business in Louisiana. Plaintiffs Morrison and Hibernia National Bank are residents of New Orleans; plaintiff Parker-son resides in the Parish of Lafayette.
Morrison owned a dwelling near Pass Christian encumbered by mortgage held by Hibernia National Bank; the mortgage note is additionally secured by endorsement of plaintiff Parkerson. Morrison communicated with Montaldo Insurance Agency in New Orleans, with whom he had theretofore done business, with reference to a policy of fire insurance. Montaldo then communicated with Giadrosich Insurance Agency of Pass Christian making arrangements for the latter to issue a policy covering Morrison’s property in favor of Morrison with Hibernia National Bank and Parkerson named loss payees under a mortgage clause. Giadrosich issued defendant’s fire policy (sued upon) dated July 11, 1963, insuring the main building for $18,000 and the contents $7500, for a term of three years. The prevailing policy endorsement names James J. Morrison (no address given) as the assured, and Hibernia National Bank, *421 New Orleans, La., and James D. Parker-son (no address given) as loss payees “as their interest may appear.” The policy stipulates that to be valid it must be countersigned by Giadrosich. It was countersigned by Giadrosich and the same day was mailed to Montaldo in New Orleans; Montaldo in turn delivered same to Hibernia National Bank at its office and a “memorandum of insurance” to Morrison. The insured building and contents were totally destroyed by fire December 31, 1963, and the insurer has declined payment for the loss for a reason not appearing.
The premium was due at “inception” of the policy. According to appellants’ brief, the assured paid Montaldo in New Orleans “who presumably remitted same to Giadro-sich after deduction of whatever share of the commission he was entitled to retain.” Thus, Montaldo, the assured’s agent, paid the premium to Giadrosich in Mississippi.
Appellants argue the policy is a Louisiana contract because it was not completed until delivered in New Orleans by Montaldo, which was the agent of defendant for delivering the policy.
Unless the policy itself provides, or positive law stipulates, that a delivery is essential to the contract’s consummation, delivery is not sacramental. We quote from 44 C.J.S. Insurance § 263, p. 1051:
“Although in a few cases there are broad and unqualified expressions to the effect that delivery of the policy is essential, the general rule, in the absence of a statute otherwise providing, is that after acceptance of an offer applying for or tendering insurance the delivery of the insurance policy to insured is not essential to the completion, validity, or enforceability of the contract of insurance, unless it is expressly agreed by the parties, as by a stipulation in the application or policy, that the contract shall not become effective until the policy is delivered to or received by the applicant, or unless the parties have not previously agreed on all the terms of. the contract. * * * ”
An insurance policy is sui generis. In re Brotherhood of Locomotive Firemen and Enginemen, 9 La.App. 74, 119 So. 79. The instant policy contains no stipulation that delivery is an ingredient of validity or when, where and in what manner a delivery is to be made.
Appleman, Insurance Law and Practice, Vol. 1, § 135, p. 207, regarding delivery states:
“It is not, of course, necessary unless specifically made so by the policy terms for the delivery to be made personally to the insured. It may be delivered to the beneficiary, a broker, or any third person whom the insured designates as a proper party to receive it. * * *
“Thus, the postal authorities are such proper third persons to whom such delivery may be made. Reasoning from this, the moment that the policy is placed in the mail, either by the home office of the company or the agent, addressed to the insured, it is binding, notwithstanding injury, illness or death occurring subsequent to its deposit therein. * * * ”
Appleman further states, Vol. 1, § 136, p. 210:
“It has been held that where there is no provision in the policy postponing its effective date until date of delivery, it is the rule that, as soon as the application is accepted by the insurer, the policy is effective, * *
The rules stated by Appleman have been enunciated by our Supreme Court. Chapman v. Mutual Life Ins. Co. of New York, 146 La. 658, 83 So. 887, holds the contract was consummated and delivery made, as between the insurer and the insured, the moment the policy was placed in the mails addressed to the local agent.
*422 The Pass Christian, Mississippi, agency accepted Montaldo’s application and prepared the desired policy and countersigned it the same day. The policy was mailed to Montaldo in New Orleans. This was the last requisite to the formation of a binding contract. Appleman, Insurance Law and Practice, Vol. 12, § 7088, p. 139, reads:
“If it is required that a policy be countersigned before going into effect, the place of countersignature is generally considered the place of the last effective act, and determines the controlling law. * * * ”
In legal contemplation a contract of insurance is made in the state where the last act is done that is necessary to create the contract and give it legal effect as such. 44 C.J.S. Insurance § 52, p. 509.
In Coci v. New York Life Ins. Co., 155 La. 1060, 99 So. 871, the Supreme Court said:
“The weight of authority seems to be to the effect that on the acceptance of the application the contract is consummated.
“14 Ruling Case Law, p. 898.
“ ‘A contract of life insurance is consummated upon the unconditional written acceptance of the application for insurance by the company to which such application is made. Actual delivery of the policy to the insured is not essential to the validity of a contract of life insurance, unless expressly made so by the terms of the contract.’ New York Life Ins. Co. v. Babcock, 104 Ga. 67, 30 S.E. 273, 42 L.R.A. 88, 69 Am.St. Rep. 134.”
In the Cocí case, it was further said:
“ * * * The insured was entitled to the delivery of the policy on the day the contract was completed and signed. The contract was from that date binding on the assured, and if binding on him it was likewise binding on the company.
“ * * * There is and can be no good reason suggested in the absence of special agreement why the binding effect of the contract should be postponed till some future date when the policy could be actually, physically, and personally delivered to the insured. * * *
“In Fidelity Mut. Life Assoc. v. Harris, 94 Tex. 25, 57 S.W. 635, 86 Am.St.Rep. 813, * * * The court held that, * * * The contract was completed and delivery made when the policy was mailed. See also, State Mut. F. Ins. Ass’n v. Brinkley, 61 Ark. 1, 31 S.W. 157, 29 L.R.A. 712, 54 Am. St.Rep. 191; Kimbro v. N. Y. Life, 134 Iowa 84, 108 N.W. 1025, 12 L.R.A. (N.S.) 421; [Mut. Life] Ins. Co. of N. Y. v. Reid, 21 Colo.App. 143, 121 Pac. 132; New York Life Ins. Co. v. Babcock, 104 Ga. 67, 30 S.E. 273, 42 L.R.A. 88, 69 Am.St.Rep. 134. See, also, note, 63 L.R.A. 840; 23 L.R.A. (N.S.) 969; 52 L.R.A. (N.S.) 276.”
Nothing in First National Bank of Lafayette v. Stovall, La.App., 128 So.2d 712; Foster v. Morrison, La.App., 145 So. 13; Landry v. Mutual Life Ins. Co. of New York, D.C., 54 F.Supp. 356, or the other cases cited by appellants is in conflict with the conclusion we reach in the instant case that the policy was complete when mailed in Mississippi. The cited cases are wholly inapposite.
Nowhere in the policy is there any specific stipulation as to a place of payment, but notwithstanding this, appellants argue that the insurer is obligated to pay the loss in New Orleans, this because the address “New Orleans, La.” appears after the name Hibernia National Bank. We think that the words New Orleans, La., were merely inserted after the name Hibernia National Bank to identify said bank. Such address was not intended to serve as a place of payment. No address is shown for Morrison or Parkerson, and this demonstrates forceably that the address of the Hiber- *423 nía National Bank has no significance in determining where the policy proceeds are to be paid.
According to Appleman, Insurance Law and Practice, Vol. 6, § 4006, p. 459:
“ * * * A policy issued by the agent of a foreign insurance company which stipulated no place for the payment of the loss was regarded as payable in the state where it was issued. * * ”
 When the place be not specified, the payment must be made at the dwelling of the debtor (R.C.C. art. 2157), and nothing appearing that the Mississippi law is any different, we must presume that the Mississippi law is to the same effect as Louisiana law. Succession of Gibson, 186 La. 723, 173 So. 185; Succession of Shadrick, La.App., 129 So.2d 606; Lake Superior Piling Co. v. Stevens, La.App., 60 So. 2d 221.
Thus, according to Appleman in his work on insurance, payment is due at the place of policy issuance, and under Louisiana codal law (with which the Mississippi law is deemed to coincide), payment is to be made at the domicile of the debtor. In any event the policy proceeds are not payable in Louisiana. The insurer undertook, if a loss occurred, to pay the actual cash value of the property not exceeding the amount which it would cost to repair or replace it. On page two of the policy the insurer reserved the option to repair or replace the property destroyed. This connotes that the place of payment in contemplation of the parties, and to be inferred from the recitals of the policy, is at the situs of the property. This exact thought was expressed by the U. S. Supreme Court in Pennsylvania Lumbermen’s Mut. F. Ins. Co. v. Meyer, 197 U.S. 407, 25 S.Ct. 483, 486, 49 L.Ed. 810, involving a Pennsylvania fire policy covering property in New York. The court said:
“Instead of making payment for the loss sustained by fire, the defendant had the option of repairing or rebuilding. If it availed itself of that right, of course it would have to rebuild at the place where the loss occurred. So far as appears from the statement of facts, the defendant has failed to make payment, and has also failed to avail itself of its option to rebuild. The payment, we think, was to be made at the same place where the rebuilding was to be done, in case the defendant availed itself of its right to rebuild; that is, within the state of New York, where the loss occurred. Failing to make payment, or failing to build or repair, it failed to comply with the terms of its contract, and out of that failure the cause of action arose in the state of New York.”
Appellants insist it was not the fire loss that created the cause of action under the policy, but rather the failure of the insurer to pay the proceeds constituted a breach of the contract and gave rise to a Louisiana cause of action. Of course, this argument follows the invalid contention that the proceeds are payable in Louisiana. It makes no difference whether the destructive fire created the cause of action or whether it was the failure to pay which constitutes it. No Louisiana cause of action is involved.
We have succeeded in finding a case on all fours with the instant case. In Orient Ins. Co. v. Rudolph, 69 N.J.Eq. 570, 61 A. 26, a Connecticut insurer issued a fire policy covering property in New York, which contained the express provision that it should not be valid until countersigned by the insurer’s agent in New York. After countersigning, the policy was mailed to the insured in Jersey City, New Jersey. The policy was held to be a New York contract to be governed by its laws. Said the court:
“ * * * The property insured was located in New York, and the contract of insurance first took effect there; for the policy contained the express *424 provision, ‘it shall not be valid until countersigned by the duly authorized agent of the company at Manuet, New York/ and it was so countersigned and then mailed to the insured at Jersey City. Under the decisions, this insurance contract was therefore a New York contract, and governed by its laws, both as to validity, construction, and discharge. * * * ”
There is no law we are cognizant of in this state clothing a Louisiana court with jurisdiction ratione materiae or in personam in a case brought against a foreign corporation, whether qualified to do business in this state or not, when the cause of action arose out of the state. Indeed if there was, there would be serious doubt as to its constitutionality. The question of due process of law would be involved. See Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, and many other cases.
Our Supreme Court said in Harnischfeger Sale Corporation v. Sternberg Co., 179 La. 317, 154 So. 10:
“ * * * The cause of action unquestionably arose outside of the state, and not with reference to business done therein. As to a cause of action so arising against a foreign corporation, whether it arises ex contractu or ex delicto, whether the foreign corporation has qualified to do business in this state or not, the general rule is that, as the cause of action arose out of the state, the courts of the state are without jurisdiction of it ratione materiae. Hodges & Co. v. Pennsylvania Railroad Company, 171 La. [699] 704, 132 So. 115; French v. Artistic Furniture Co., 173 La. 982, 139 So. 307. * * * ”
In Louisville & N. R. Co. v. Chatters and Southern Ry. Co. et al. v. Chatters, 279 U.S. 320, 49 S.Ct. 329, 73 L.Ed. 711, the United States Supreme Court held, to quote paragraph 2 of the syllabus:
“Foreign corporation, even when present within jurisdiction and amenable to suit, may not, unless it has consented, be sued on causes of action arising elsewhere, which are unconnected with any corporate action by it within jurisdiction.”
See also Staley-Wynne Oil Corporation v. Loring Oil Co., 182 La. 1007, 162 So. 756, and Harmann v. United States Fidelity & Guaranty Co., D.C.La.1946, 64 F.Supp. 36. In the latter case, Judge Porterie correctly said:
“ * * * when the defendant qualified to do business in the state, its waiver of jurisdiction as to person, as well as of regular civil process, was limited to actions or proceedings against it arising out of contracts and policies written in the state of Louisiana, or to suits over accidents occurring within the state of Louisiana. * * * ”
There are several statutes in Louisiana pertaining to the qualification of foreign corporations for doing business in Louisiana and the method and manner of citations and service of process upon foreign corporations, viz.: R.S. 22:981 et seq., R.S. 22:1021, R.S. 22:1022, R.S. 22:985, R.S. 22:1251 et seq., R.S. 22:1253(A), C.C.P. art. 6(1), C.C.P. art. 1261, R.S. 13:3471, as amended.
Under such statutes service of process on a non-resident insurance corporation may only be made on such corporation through the Secretary of State when the claim arises by virtue of any policy issued upon any property or other risk situated in this state (R.S. 22:1022); or so long as any contract or other liability of such insurer in this state shall remain outstanding (R.S. 22:985); or when there is a transacting of business in this state by a foreign insurer without a certificate of authority, or the issuance or delivery by it of a policy or contract of insurance to a citizen or resident of the state (R.S. 22:1253, subd. A) ; or in any suit on a cause of action resulting from a business activity in this state (R.S. 13:3471, as amended).
*425 The first subsection of R.S. 13:3471, as amended, changes the procedural law theretofore in effect with reference to service of process on foreign corporations and the rules there laid down supplement those governing the service of citation in a civil action or proceeding contained in the Code of Civil Procedure. According to R.S. 13 3471(1), as amended, if the foreign corporation is not required by law to appoint an agent for service, hut has engaged in a business activity in this state, service in any suit on a cause of action resulting from such business activity in this state may be made on any employee or agent of the corporation found within the state. If an employee or agent cannot be found, a return to that effect shall be made in which event the court shall order service upon the Secretary of State.
The second citation (March 30, 1965) was attempted on defendant through the Secretary of State under R.S. 13:3471(1).
Despite the official comments of Professor Henry G. McMahon to the effect that the amendment to R.S. 13:3471(1) extends Louisiana personal jurisdiction over foreign corporations with “minimum contacts” with Louisiana to the fullest constitutional limits of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, and McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, the Louisiana law presently requires that the cause of action must arise out of a particular business activity in Louisiana to give a state court jurisdiction ratione materiae or personae and to permit substituted service on the corporation through the Secretary of State. The amendment to R.S. 13 :3471 cannot be stretched and distorted so as to embrace a suit against a foreign corporation brought on a cause of action arising without Louisiana as plaintiffs would have it.
Both cases alluded to by Professor McMahon differ materially from the case before us in that the instant contract had no connection whatever with Louisiana. That the policy was issued to residents of Louisiana is mere happenstance.
In International Shoe Company v. State of Washington, supra, the court held valid the service of process within the state upon appellant through one of its salesmen in a suit for contributions to the state unemployment fund exacted by Washington statutes on the wages paid by appellant to salesmen. Appellant contended the service was null and void and that it had been deprived of due process of law in that it had no office in Washington, made no contracts either for the sale or purchase of merchandise, maintained no stock in the state, and made no deliveries there of goods in intrastate commerce. The authority of appellant’s eleven to thirteen salesmen, who all resided in Washington but who are under the direct supervision of sales managers located in other states, was limited to exhibiting samples and soliciting business. Orders they received were transmitted to appellant’s office outside the state, merchandise for filling the orders was shipped f. o. b. from points outside Washington to the purchasers within the state, the customer being billed at the point of shipment. The court was of the opinion that the activities of the salesmen established the corporation's presence in the state, that there was no abuse of the Due Process Clause, and that service on the salesmen was sufficient notice of the suit.
In McGee v. International Life Insurance Company, supra, the beneficiary recovered judgment in a California state court against defendant, an insurer domiciled in Texas, on a contract of insurance issued to a California resident who paid premiums by mail to the insurer in Texas. Service of process on defendant was made via mail to its principal place of business in Texas. The insurance company had neither office nor agent in California and had neither solicited nor done business there apart from the policy involved. The suit was filed pursuant to a state statute which subjects foreign corporations to suit in' 'California on insurance contracts with *426 residents of that state even though the corporation cannot be served with process within its borders. The Texas courts refused to enforce the judgment holding it void under the Fourteenth Amendment because service of process outside California could not give the courts of that state jurisdiction over defendant. The U. S. Supreme Court reversed the Texas court and held that California had a manifest interest in providing effective means of redress for its residents when their insurers refused to pay claims on contracts which had substantial connection with that state. The “substantial connection” arose from the fact that both the risk, i. e. the insured, and the beneficiary, were residents of California.
J- Both attempted citations on the defendant through the Secretary of State are ineffective and null and void; the lower court had no jurisdiction ratione materiae or in personam over defendant.
The judgment appealed from is affirmed.
Affirmed.