HAMLIN, Justice:
 

 James J. Morrison, a resident of. the Parish of Orleans, Louisiana, Hibernia National Bank, a national banking corporation with its banking offices located in the City of New Orleans, Louisiana, and James D. Parkerson, a resident of the Parish of Lafayette, Louisianaj instituted the present action in the Civil District Court for the Parish of Orleans (a Louisiana court) against New Hampshire Insurance Company (Hereinafter referred to as New Hampshire) to enforce payment under Comprehensive Dwelling Policy No. CDP 09-83-42 for a fire loss suffered in the State of Mississippi. Plaintiffs requested that New Hampshire be served through the Secretary of State of Louisiana.
 

 On November 2, 1964, New Hampshire excepted to the citation, service of'process, jurisdiction ratione personae and jurisdiction ratióne materiae of the Civil District Court for the Parish of Orleans, and prayed for summary judgment dismissing plaintiffs’ suit. Plaintiffs had defendant re-cited and
 
 *549
 
 re-served pursuant to Article 1261
 
 [1]
 
 of the Louisiana Code of Civil Procedure. The second citation was returned on March 26, 1965 by the Deputy Civil Sheriff, Parish of Orleans, with the notation that, after due and diligent search and inquiry, he was unable to find or locate the defendant or anyone legally authorized to represent it.
 

 On March 26, 1965 the trial court heard defendant’s exceptions and motion for summary judgment, and on March 30, 1965 rendered judgment maintaining the exceptions and granting the motion for summary judgment. Plaintiffs’ suit was dismissed at their cost.
 

 Plaintiffs applied for a new trial on April 2, 1965. On March 30, 1965, they had again had a copy of their petition and a new citation served on the Secretary of State of Louisiana.
 
 [2]
 
 On April 20, 1965, defendant filed “Exceptions to the Sufficiency of Citation and Service of Process of March 30, 1965, Jurisdiction over the Person, Jurisdiction over the Subject Matter and Motion for Summary Judgment.” The trial court denied plaintiffs’ application for a new trial after hearing on April 30, 1965, being of the opinion that its judgment previously rendered should remain undisturbed.
 

 On appeal, the Court of Appeal affirmed the judgment of the trial court. (181 So.2d 418.) We granted Certiorari (248 La. 1034, 183 So.2d 653, Art. VII, Sec. 11, La.Const. of 1921) in order that we might review its judgment and determine its correctness.
 

 The Court of Appeal has clearly stated the facts leading to the institution of the instant proceeding as follows:
 

 “Defendant is a New Hampshire corporation authorized to write fire policies
 
 *551
 
 in Mississippi; Giadrosich. Insurance Agency is its agent in the Town of Pass Christian, that state. Defendant is also qualified to do and does business in Louisiana. Plaintiffs Morrison and Hibernia National Bank are residents of New Orleans; plaintiff Parkerson resides in the Parish of Lafayette.
 

 “Morrison owned a dwelling near Pass Christian encumbered by mortgage held . by Hibernia National Bank; the mortgage note is additionally secured by endorsement of plaintiff Parkerson. Morrison communicated with Montaldo Insurance Agency in New Orleans, with whom he had theretofore done business, with reference to a policy of fire insurance. Montaldo then communicated with Giadrosich Insurance Agency of Pass Christian making arrangements for the latter to issue a policy covering Morrison’s property in favor of Morrison with Hibernia National Bank and Parkerson named loss payees under a mortgage clause. Giadrosich issued defendant’s fire policy (sued upon) dated July 11, 1963, insuring the main building for $18,-000 and the contents $7500, for a term of three years. The prevailing policy endorsement names James J. Morrison (no address given) as the assured, and Hibernia National Bank, New Orleans, La., and James D. Parkerson (no address given) as loss payees ‘as their interest may appear.’ The policy stipulates that to be valid it must be countersigned by Giadrosich. It was countersigned by Giadrosich and the same day was mailed to Montaldo in New Orleans; Montaldo in turn delivered same to Hibernia National Bank at its office and a ‘memorandum of insurance’ to Morrison. The insured building and contents were totally destroyed by fire December 31, 1963, and the insurer has declined payment for the loss for a reason not appearing.
 

 “The premium was due at ‘inception’ of the policy. According to appellants’ brief, the assured paid Montaldo in New Orleans ‘who presumably remitted same to Giadrosich after deduction of whatever share of the commission he was entitled to retain.’ * * * ”
 
 [3]
 

 The Court of Appeal found that no Louisiana cause of action is involved herein. It stated that it was cognizant of no law clothing a Louisiana court with jurisdiction ratione materiae or in personam in a case brought against a foreign corporation, whether qualified to do business in Louisiana or not, when the cause of action arose out of the State. The Court of Appeal was of the opinion that the Louisiana law presently requires that the cause of action must arise out of a particular business activity in Louisiana in order to give a State court jurisdiction ratione materiae or personae. In this matter, the Court
 
 *553
 
 found that the doctrine of “Minimum Contacts” does not apply, and that substituted service on the corporation through the Secretary of State is not sufficient, LSA-R.S. 22:985 and 22:1022 not being applicable to New Hampshire. The Court was of the further opinion that the amendment to LSA-R.S. 13:3471
 
 [4]
 
 could not be stretched and distorted so as to embrace a suit against a foreign corporation brought on a cause of action arising without Louisiana.
 

 The Court of Appeal further found that nowhere in the policy was there a specific stipulation as to a place of payment. This finding was made after consideration of the following recitation on page 1 of the policy: “Mortgage Clause: Subject to the provisions of the mortgage clause attached hereto, loss, if any, on Items 1 and 2 of Coverage Group A shall be payable to: Hibernia National Bank, New Orleans, Louisiana, & James D. Parkerson, as their
 
 *555
 
 Interest May Appear.”
 
 [5]
 
 It was the Court’s opinion that the words “New Orleans, Louisiana” appearing after the name “Hibernia National Bank” identified the bank, and that such address was not intended to serve as a place of payment. The Court still further found that the policy provisions connoted that the place of payment was the situs of the property. This finding was predicated on the insurer’s reservation to repair or replace the property destroyed.
 
 [6]
 

 Plaintiffs relators assign some twenty errors to the judgment of the Court of Appeal. We shall hereinafter consider only those we find necessary to a determination of this matter.
 

 Defendant avers that the judgment of the Court of Appeal is correct and should be affirmed.
 

 In determining whether the defendant is subject to the jurisdiction of the Civil District Court for the Parish of Orleans, and whether substituted service upon it through the Secretary of State is sufficient, we find that a discussion of the doctrine of “Minimal Contacts” should be initial. In Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), Chief Justice Warren made the following pertinent statement concerning the doctrine:
 

 “ * * * As technological progress, has increased the flow of commerce between States, the need for jurisdiction over nonresidents has undergone a similar increase. At the same time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. In response-to these changes, the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, to the flexible standard of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See Vanderbilt v. Vanderbilt, 354 U.S. 416, 418, 77 S.Ct. 1360, 1362, 1 L.Ed.2d 1456. Those restrictions are more than a guarantee of' immunity from inconvenient or distant litigation. They are a consequence of' territorial limitations on the power of' the respective States. However minimal the burden of defending in a foreign.
 
 *557
 
 tribunal, a defendant may not be called upon to do so unless he has had the ‘minimal contacts’ with that State that are a prerequisite to its exercise of power over him. * * * ”
 
 [7]
 

 In International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945-1946 Term), the U.S. Supreme Court affirmed a judgment of the Superior Court of the State of Washington, which held that the State of Washington could assess contributions for Unemployment Compensation against International Shoe Company and could entertain suit for their collection. Notice of assessment was personally served upon a sales solicitor employed by International in Washington, and a copy of the notice was mailed by registered mail to International at its address in St. Louis, Missouri. The authority of the salesmen was limited to exhibiting their samples and soliciting orders from prospective buyers, at prices and on terms fixed by International. The salesmen transmitted orders to International’s office in St. Louis for acceptance or rejection, and when accepted the merchandise for filling the orders was shipped f. o. b. from points outside Washington to the purchasers within the State. All merchandise shipped into Washington was invoiced at the place of shipment from which collections were made. No salesman had authority to enter into contracts or make collections. International resisted the assessment, contending that its activities within the State of Washington were not sufficient to’manifest its “presence” there; it contended that it would be denied Due Process if the State of Wash7 ington could subject it to suit'for collection of the assessment.
 

 The U.S. Supreme Court held in the International Case that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he must have certain minimum contacts with it such that the maintenance of the suit would not offend “traditional notions of fair play and substantial justice.” The Court concluded that International rendered itself amenable to. suit upon the obligations arising out of the activities of its salesmen in Washington, and that therefore it had “presence” in the State which would subject it to such suit.
 

 The case of McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, involved a life insurance contract. In 1944, Lowell Franklin, a resident of California, purchased a life insurance policy from Empire Mutual Insurance Company, an Arizona corporation. In 1948, International agreed with Empire to assume
 
 *559
 
 its insurance obligations. Franklin accepted an offer for reinsurance, which he received in California, and until his death in 1950 paid premiums by mail from his California home to International’s Texas office. After Franklin’s death, his mother, the beneficiary, secured a California judgment on the policy. International was served by -regtered mail at its principal place of business in Texas. The California court based its jurisdiction on the State statute which subjected foreign corporations to suit in California on insurance contracts with residents of that State even though such corporations could not be served with process within its borders. The Texas courts refused to enforce the judgment, holding that it was void under the Fourteenth Amendment because service of process outside California could not give California courts jurisdiction over International. In holding that the service was sufficient, the U.S. Supreme Court stated:
 

 “Turning to this case we think it apparent that the Due Process Clause did not preclude the California court from entering a judgment binding on respondent. It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. * * * The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died. It cannot be denied that California has a manifest interest . in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable. * * * Of course there may be inconvenience to the insurer if it is held amenable to suit in California where it had this contract but' certainly nothing which amounts to' a denial of due process. * * * ” Cf. L’. D. Reeder Contractors of Arizona v.’ Higgins Industries, 9 Cir., 265 F.2d 768.
 

 We have discussed the above three cases in detail because of their importance. They have been cited and quoted in State and Federal decisions repeatedly.' . It appears that they are more or less the precedent for the doctrine or concept of “Minimum or Minimal Contacts” as recently enunciated. The doctrine now exists, and it has been held applicable not only to suits on all types of insurance policies but also to tort actions and actions on contract.
 

 The immediate facts of the case at issue are always important in determining whether such “Minimum Contacts”, exist as would give the court, in which the plaintiff or plaintiffs filed suit, jurisdiction.
 

 “The Court must therefore first look to see what 'contacts’ the defendants each have with the State * under the facts of this case. It is apparent .tjiat any
 
 *561
 
 definition of ‘minimum contacts/ if not also any definition of ‘traditional notions of fair play/ will require an evolutionary process rather than a quick definitive statement, as these terms involve subjective judgments that must be based upon a multitude of variant factors as they are presented in a multitude of cases. The existence or nonexistence of the necessary ‘minimum contacts’ to justify the upholding of personal jurisdiction over foreign corporations under the Fourteenth Amendment as interpreted in the International Shoe Company case must obviously be worked out with reference to the facts of a particular case rather than in a statement of dogmatic rules of all-inclusive principles.” Velandra v. Regie Nationale Des Usines Renault, U.S. Ct. of Appeals, Sixth Circuit, 336 F.2d 292 (1964). See, Fisher Baking Company v. Continental Baking Corporation, D.C., 238 F.Supp. 322.
 

 “The liberalization, however, cannot be extended to a point where injustice is done a defendant or where the extension infringes upon the constitutional limitations of due process. It is always necessary that there be sufficient minimum contacts within the state. What constitutes such contacts depends upon the facts of each case when judged by the requirements laid down by the Supreme Court of the United States and our own state courts. In each of the cases in which personal jurisdiction has been held valid, the plaintiff put before the court some specific act or acts out of which his complaint arose and which he averred constituted the transaction of business within the state. The court was thus enabled to appraise the acts and to judge whether they provided sufficient contacts to confer the requested jurisdiction. * * * ” Koplin v. Saul Lerner Co., 52 Ill.App.2d 97, 201 N.E.2d 763. See, Perkins v. Benquet Consolidated Mining Company, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485.
 

 Some courts have considered the substance of the act rather than the quantity. In Kropp Forge Company v. Jawitz, 37 Ill.App.2d 475, 186 N.E.2d 76, the court stated:
 

 “We believe that the ultimate test is the substance of the act rather than the quantity. The criteria ‘cannot be simply mechanical or quantitative. * * * Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to, insure.’ International Shoe Co. v. State of Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 159.”
 

 In Hearne v. Dow-Badische Chemical Company, D.C., 224 F.Supp. 90, the court thought that the following factors should
 
 *563
 
 be considered in determining whether there were “Minimum Contacts” with the forum:
 

 “(1) The nature and character of the business; ■ •
 

 “(2) The number arid type of activities within the forum;
 

 “(3) Whether such activities give rise to the cause of action;
 

 “(4) Whether the forum has some special interest in granting relief; and
 

 “(5) The relative convenience of the parties.”
 

 See, Tyee Construction Company v. Dulien Steel Products, Inc. of Wash., 62 Wash.2d 106, 381 P.2d 245; Aftanase v. Economy Baler Company, 8 Cir., 343 F.2d 187.
 

 A state has a right to protect its citizens; such protection would extend to providing, by statute, jurisdiction in matters in which “Minimum Contacts” exist.
 

 “All legislation making foreign corporations amenable to judicial process in the state in which they seek the privilege of doing business is predicated upon the right of the state to protect its citizens in their controversies with such corporations by requiring that the same be adjudicated in the courts of the state rather than compelling its citizens to travel to remote places to litigate such controversies. Judicial decisions upholding such legislation are likewise founded upon the same logic. No sound reason appears why the state should not have power to compel foreign corporations seeking entrance to the state to agree that while engaged in business under such license, the state court should have jurisdiction of all controversies arising between it and the citizens of the state.” Travelers Fire Ins. Co. v. Ranney-Davis Mercantile Co., 10 Cir.; 173 F.2d 844, cert. denied, 337 U.S. 930, 69 S.Ct. 1495, 93 L.Ed. 1737.
 

 Applying the above jurisprudence to the instant facts, we find that plaintiffs are all residents of Louisiana; it is to their convenience to sue in Louisiana, and all have acquiesced in having the Civil District Court for the Parish of Orleans as their forum. Defendant will suffer no great inconvenience nor injustice by being sued in Louisiana rather than in Mississippi. See, Byrd v. Southern Railway Company, D.C.App., 203 A.2d 37; Byrd v. Norfolk and Western Railway Company, D.C.App., 194 A.2d 651; Latimer v. S/A Industrias Reunidas F. Matarazzo, 2 Cir., 175 F.2d 184. Plaintiff Morrison’s agent, Montaldo Insurance Agency, is located in New Orleans, Louisiana. It conducted substantial business activities in Louisiana concerning the policy by contacting Giadrosich Insurance Agency in Mississippi from New Orleans, Louisiana, with respect to issuing the policy, by receiving the policy after issuance, and by delivering it to Hibernia National Bank in New Orleans, Louisiana,
 
 *565
 
 -and by delivering the “memorandum of insurance” to Morrison in New Orleans. Montaldo’s activities are associated with the cause of action — irrespective of its origin — herein. The first installment of the premium was paid to Montaldo in Louisiana, which company remitted to Giadrosich. The policy is made payable to Hibernia National Bank, New Orleans, ■Louisiana, & James D. Parkerson, both residents of Louisiana and both plaintiffs. Hibernia National Bank is the mortgagee of Morrison’s Mississippi property, and its domicile is New Orleans, Louisiana. Although the policy does not state that it is payable “at” New Orleans, Louisiana, we find that it reflects an intent to make it payable in such City. If the policy is ambiguous as to the place of payment, such ambiguity has to be construed against the insurer or in favor of the insured. Schonberg v. New York Life Ins. Co., 235 La. 461, 104 So.2d 171; Creole Explorations, Inc. v. Underwriters at Lloyds, 245 La. 927, 161 So.2d 768. These foregoing factors ■constrain us to conclude that “Minimum Contacts” exist with and within the forum— ■Civil District Court for the Parish of Orleans — and with and within the State •of Louisiana.
 

 We next approach the question of whether under the statutory law of Louisiana the substituted service of the defendant through the Secretary of State of Louisiana is sufficient to vest the Civil District Court for the Parish of Orleans with jurisdiction over the person of the defendant, New Hampshire.
 

 Article 6, West’s LSA-C.C.P. states that jurisdiction over the person is the legal power and authority of a court to render a personal judgment against a party to an action or proceeding, and one of the bases for this jurisdiction is service of process on the defendant, or on his agent for the service of process. A comment to this article recites that it is broad enough to include the extension of the limits of jurisdiction over the person recently made in the case of McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223. Defendant is licensed to do business in this State, but insofar as the record reflects it has no lawful agent for service of process.
 
 [8]
 
 LSA-R.S. 22:5(4) provides that a “Foreign Insurer” is one formed under the laws of any other state or territory of the United States or the District of Columbia. New Hampshire is a New Hampshire corporation doing business in Louisiana arid doing business in Mississippi through its agent, Giadrosich Insurance Agency. Under these facts, we also find that New Hampshire with respect to Louisiana is a “Foreign Insurer.”
 
 *567
 
 LSA-R.S. 22:985 provides:
 

 “Every foreign or alien insurer shall appoint the secretary of state to be its true and lawful attorney in this state upon whom, or some other person in his office during his absence he may designate, all lawful process in any action or proceeding against such insurer may be served, which shall constitute service on such insurer. Such appointment shall continue in force so long as any contract or other liability of such insurer in this state shall remain outstanding. Whenever such process shall be served upon the secretary of state he shall forthwith forward a copy of the process by prepaid registered mail to the person designated for the purpose by the insurer.” See, also, LSA-R.S. 22:1253.
 

 We find that the above statute, as well as LSA-R.S. 13:3471, supra, reflects the intention of the Legislature of Louisiana to provide for substituted service through the Secretary of State in matters such as the instant one. We, therefore, conclude that the substituted service of defendant through the Secretary of State of Louisiana is sufficient and vests the Civil District Court for the Parish of Orleans with jurisdiction in personam over New Hampshire.
 

 The case of Orient Ins. Co. v. Rudolph, 69 N.J.Eq. 570, 61 A. 26, is not apposite; it did not involve facts such as those set forth herein.
 

 Having found that “Minimum Contacts” exist with and within the forum and with and within the State of Louisiana and having found that the instant service through the Secretary of State is sufficient, we conclude that New Hampshire’s exceptions to the jurisdiction ratione materiae and ratione personae of the Civil District Court for the Parish of Orleans are without merit. Therefore, its motion for summary judgment should not have been maintained. Our findings neither violate “Due Process” nor fair play and substantial justice. See, Babineaux v. Southeastern Drilling Corporation, La.App, 170 So.2d 518, 247 La. 615, 172 So.2d 700; Seacat Marine Drilling Co. v. Babineaux, 382 U.S. 16, 86 S.Ct. 67, 15 L.Ed.2d 12; Lusk v. Pacific Mut. Life Ins. Co., D.C., 46 F.2d 502; 26 La.L.Rev. 372-385. Cf. Hearne v. Dow-Bacische Chemical Company, D.C., 224 F.Supp. 90; United Barge Co. v. Logan Charter Service, Inc., D.C., 237 F.Supp. 624; Phillips v. Anchor Hocking Glass Corporation, 2 Ariz.App. 267, 407 P.2d 948; Hicks v. Crane Co., D.C., 235 F.Supp. 609; Mladinich v. Kohn, 250 Miss. 138, 164 So.2d 785; Eicher-Woodland Co., Inc. v. Buffalo Ins. Co. of New York, 198 La. 38, 3 So.2d 268; Ewing v. Lockheed Aircraft Corporation, D.C., 202 F.Supp. 216.
 

 
 *569
 
 For the reasons assigned, the judgment of the Court of Appeal, Fourth Circuit, is reversed and set aside. The case is remanded to the Civil District Court for the Parish of Orleans for further proceedings according to law and consistent with the views hereinabove expressed. Costs of these proceedings to be paid by defendant. All other costs to await the final determination of this case,
 

 HAMITER, J., dissents, being of the opinion that the judgment of the Court of Appeal is correct,
 

 McCALEB, J., recused.
 

 [1]
 

 . “Service of citation or other process on a domestic or foreign corporation is made by personal service on any one of its agents for service of process.
 

 “If the corporation has failed to designate an agent for service of process, or if there is no registered agent by reason of death, resignation, or removal, service of the citation or other process may be made at any place where the business of the corporation is regularly conducted either:
 

 “(1) By personal service on any officer, director, or resident agent named in the articles of incorporation or in the last report previously filed with the secretary of state, or
 

 “(2) By personal service on any employee of suitable age and discretion.” West’s LSA-O.C.P., Art. 1261.
 

 [2]
 

 . “If the officer making service certifies that he is unable, after diligent effort, to have service made as provided in Article 1261, then the service may be made personally on the secretary of state, or on a person in his office designated to receive service of process on corporations. The secretary of state shall forward this citation to the corporation at its last known address.” Art. 1262, West’s LSA-O.C.P.
 

 The record reflects that the Secretary of State of Louisiana forwarded the documents filed to New Hampshire at Manchester, New Hampshire, all appearing as a matter of record in the archives of the Office of the Secretary of State.
 

 [3]
 

 . Plaintiffs make the same statement in brief filed in this Court.
 

 [4]
 

 . “The following rules supplement those governing the service of citation and other legal process in a civil action or proceeding contained in the Code of Civil Procedure :
 

 “(1) If the foreign corporation is not one required by law to appoint an agent for the service of process, but has engaged in a business activity in this state, service of process in an action or proceeding on a cause of action resulting from such business activity in this state, or for any taxes due or other obligations arising therefrom, may be made on any employee or agent of the corporation of suitable age and discretion found in the state. If such employees or agents are no longer in the state, or cannot be found after diligent effort, the officer charged with the duty of making the service shall make his return to the court, stating the efforts made by him to secure service and the reason why he was unable to do so. Thereupon the court shall order that service shall be made on the secretary of state, or on some other individual in his office whom the secretary of state may designate to receive service of process. The secretary of state shall ascertain the domiciliary post office address of the corporation,, and shall send the original papers served to the corporation by registered mail, with return receipt requested. The secretary of state shall retain in his office true copies of these papers, on which he shall note the date, the manner and other particulars of the service, and of the disposition made of the original papers.
 

 « * * * ”
 

 In an explanatory note, Henry G. McMahon states in part: “The first subsection of this amended section makes two important changes in the procedural law. First, it permits the courts of Louisiana, under Art. 6(1), LSA-Code of Civil Procedure, to exercise the full potential of jurisdiction in personam over foreign corporations allowed by recent decisions of the United States Supreme Court * * *. This amended section provides the method of service on a foreign corporation which is doing or has done some business in this state, interstate in character or otherwise, but which is not doing or has not done sufficient intrastate business to require a license to do business here, and the appointment of an agent for the service of process. Cf. Arts. 1261, 1262, LSA-Code of Civil Procedure. Second, this amended subsection drops the prior requirement that the business activity in this state bo done by the corporation’s agents or employees in Louisiana. * * * ”
 

 [5]
 

 . The Mortgage Clause states that loss or damage, if any, under the policy, (on buildings) shall be payable to “Hibernia National Bank, New Orleans, La. & James D. Parkerson as their Interest May Appear.”
 

 [6]
 

 . “It shall be optional with this Company to take all, or any part, of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention so to do within thirty days after the receipt of the proof of loss herein required.”
 

 [7]
 

 . In the Hanson Case, tlie U. S. Supreme Court held that under the facts of the case, a Florida court did not have jurisdiction to pass upon the validity of a Delaware trust.
 

 [8]
 

 . On page 16 of its brief filed in this Court, New Hampshire states: “Had defendant appointed some individual or corporation to be its lawful agent for service of process, service on that individual would have sufficed.”