488 So.2d 259 (1986)
MAMOU FARM SERVICES, INC., Plaintiff-Appellee,
v.
HUDSON INSURANCE COMPANY, Defendant-Appellant.
No. 85-129.
Court of Appeal of Louisiana, Third Circuit.
May 14, 1986.
*260 Broadhurst, Brook, Wayne & Shullaw, Lafayette, for defendant-appellant.
J. Jake Fontenot, Mamou, for plaintiff-appellee.
Before DOMENGEAUX, J., BABINEAUX[*] and TEEKEL[*], JJ. Pro Tem.
BABINEAUX, Judge Pro Tem.
This is an action by Mamou Farm Services, Inc., the insured, against Hudson Insurance Company, the insurer, instituted on August 12, 1983. It arises from a fire loss on June 3, 1983 which destroyed the insured's business establishment located in Mamou, Louisiana. The trial court rendered judgment in favor of the plaintiff and made the following awards:

*261
Main building $310,000.00
Inventory 159,950.60
Machinery 72,000.00
Contents 48,000.00
Incidental Expenses 7,383.75
Lumber 5,000.00
Damages to Rear Building 1,064.00
TOTAL $603,398.35

The trial court additionally assessed penalties in the amount of $72,407.76 and attorney's fees of $22,500.00. The insurer instituted this appeal and the insured answered the appeal seeking an increase in attorney's fees for work done on the appeal.
In February of 1983, Mr. Barry Hopkins, an independent insurance agent, approached Mr. Terry Fontenot, president of Mamou Farm Service, Inc. to negotiate the possibility of contracting for insurance coverage with Mr. Fontenot. Mr. Hopkins was successful in convincing Mr. Fontenot to change his existing insurance and to contract for future coverage through Mr. Hopkins. Pursuant to these negotiations a written temporary binder was issued by the London Agency on behalf of the Hudson Company on April 5, 1983. This binder expired on May 5, 1983. It was replaced by a written binder issued by the Hudson Company effective May 5, 1983 through July 5, 1983. Both of these binders provided blanket coverage on the plaintiff's buildings and machinery in the amount of $430,000.00; blanket coverage on the contents (excluding inventory) of the plaintiff's buildings in the amount of $55,000.00; and, blanket coverage on the stock or inventory in the plaintiff's buildings in the amount of $500,000.00. Both of these binders make reference to a policy period of April 5, 1983 through April 5, 1984. These binders further state that replacement cost coverage is provided for the buildings and contents.
On June 3, 1983, a fire occurred on the insured premises. The main building, designated as 101 Mulberry, was totally destroyed as were nearly all of the contents including equipment and inventory. A rear building, 101(R) Mulberry, was partially damaged. The main building consisted of a wood frame structure housing a fertilizer blending and mixing plant. The main building was a specialized structure uniquely outfitted to fit the requirements of such a plant. Equipment within the plant building consisted of fixed equipment utilized in the plant as well as movable equipment characterized by the parties as personal contents. The building further housed inventory consisting mainly of fertilizer and some seeds and grains. The main building and nearly all of its contents, except for a small portion of the inventory, were totally lost in the fire.
On June 6, 1983, the scene was investigated by representatives of Mr. Hopkins' agency. Mr. Love, whose office had been retained by Hudson to adjust the loss, investigated the insured premises on June 6, 1983. Mr. Cagnina, from the same office, viewed the property on June 8, and he became the principal adjuster thereafter. The insurance policy which had been issued by Hudson was not delivered to the plaintiff until after the fire, on June 6, 1983, by Hopkins' office. The plaintiff filed suit on August 12, 1983, yet no tender of payment was made by Hudson until September 26, 1983, when the plaintiff received checks from Hudson totaling $434,003.77 for the totality of the loss. The insured had also received $15,482.82 on August 10, 1983 for the inventory which had been salvaged.
The first issue we must decide is whether the contract of insurance is governed by the binder or by the policy. The plaintiff sued the defendant on the insurance policy, attaching a copy of the policy to the petition. At trial the plaintiff introduced the binders over objections by the defendant. In its reasons for judgment, the trial court held that the binder was the only contract of insurance in existence at the time of the loss. This holding was based upon findings that the insurer unreasonably delayed delivery of the policy to the insured heightened by the fact that the policy contained endorsements which had not been agreed upon by the insured.
The binder which was effective May 5, 1983 through July 5, 1983 provided coverage in the same amounts provided in the policy. The basic differences are with regard to the endorsements. The binder *262 states that replacement cost coverage is provided without mention of the requirement that there be an actual replacement as is provided in the replacement cost endorsement attached to the policy. Furthermore, the binder makes no mention of the stock reporting endorsement which is attached to and made a part of the insurance policy.
After careful review of the entire record in this proceeding we conclude that the policy of insurance governs the relationship existing between these parties. The court below erred in holding the binder applicable.
The plaintiff filed this lawsuit seeking relief under the policy of insurance. The binders were not brought into the record in any way until after the trial had begun. Throughout the negotiations concerning the plaintiff's claim no mention of the binder was made. Mr. Fontenot submitted an inventory report for the month of May in conformity with the stock reporting endorsement. The evidence strongly supports the conclusion that the insured intended that the contract of insurance would include a stock reporting endorsement and that the replacement cost endorsement was included in the policy with the full knowledge of the insured. The evidence in no way reveals that the insured rejected the coverage provided in the policy by complaining of the inclusion of endorsements allegedly not bargained for. We feel the policy of insurance together with the endorsements accurately reflects the contract knowingly entered into by the insured and the insurer.
We find no merit to the argument that the policy is not applicable because it was not delivered until after the fire occurred. "Unless the policy itself provides, or positive law stipulates, that a delivery is essential to the contract's consummation, delivery is not sacramental." Morrison v. New Hampshire Insurance Company, 181 So.2d 418, (La.App. 4th Cir.1966), reversed on other grounds, 249 La. 546, 187 So.2d 729 (1966). See Also Pruitt v. Great Southern Life Ins. Co., 202 La. 527, 12 So.2d 261 (1943). Nor do we feel the evidence presented shows that delivery of the policy was unreasonably delayed.
The policy as written provides blanket coverage on all of the insured property. We find the replacement cost endorsement is inapplicable because the plaintiff elected not to replace the building and equipment destroyed. Therefore, evaluation of the plaintiff's property losses must be determined in conformity with the provisions of LSA-R.S. 22:695(B). It provides in pertinent part:
"... for any loss of an insured object which would constitute total loss under Sub-section A of this provision but which loss is covered by a blanket form policy of insurance, Sub-section B of this provision shall apply, and the insurer shall pay to the insured an amount equal to the actual cash value at the time of the loss of each insured object so destroyed, not exceeding the total amount of the insurance."
The insurer contends that pursuant to this provision of law, depreciation should be considered in determining the actual cash value of property which is totally destroyed. We agree. See Roberts v. Houston Fire and Casualty, Co., 168 So.2d 457 (La.App. 3rd Cir.1964). The cases cited by the plaintiff for the proposition that depreciation should not be considered are inapplicable as the losses at issue in those case involved partial losses only, which is treated differently by LSA-R.S. 22:695. See Gibsland Supply Co. v. American Employers Ins. Co., 242 So.2d 310 (La.App. 2d Cir.1970); Holloway v. Liberty Mutual Fire Insurance Co., 290 So.2d 791 (La.App. 1st Cir.1974).
We feel, however, that depreciation is only one of many factors which should be considered in determining actual cash value. The Court in Mercer v. St. Paul Fire and Marine Insurance Company, 318 So.2d 111 (La.App. 2d Cir.1975) stated at page 114:
"In recent years, a number of courts, seeking to effectuate more complete indemnity, *263 have adopted a third method, the broad evidence rule, to determine actual cash value of property at the time of loss. Under this rule, the trier of facts may consider any evidence logically tending to the formation of a correct estimate of the value of the insured property at the time of the loss. Generally, it may be said that the proper test or criterion of actual cash value in a particular case depends upon the nature of the property insured, its condition, and other circumstances existing at the time of the loss."
See also LeBlanc v. Underwriters at Lloyds, London 402 So.2d 292 (La.App. 3rd Cir.1981). Thus while we are convinced that depreciation should be considered as a factor in determining the actual cash value of the property destroyed we are also persuaded that the entirety of the evidence must be evaluated to make an appropriate determination of the actual cash value.
Mr. Cagnina, who adjusted the losses for Hudson, initially quoted a replacement cost of $230,000.00 for the main building. He derived this figure from the Marshall & Swift manual. He then applied an 11% depreciation which approximates the $204,992.00 finally tendered by Hudson. At the trial, Mr. Cagnina admitted he erred in his initial computation of the replacement cost figure and upon recomputation determined that replacement value according to Marshall & Swift was $312,000.00 without considering depreciation. Mr. Summerall, who testified as an expert, quoted a replacement cost of $308,603.00 excluding electrical. An estimate for the electrical work was admitted which would bring the total, when added to Summerall's estimate, to approximately $330,000.00. We have reviewed the testimony of the expert, Gene Cope, concerning the actual cash value of the main building and find that his testimony is entitled to little weight if any. Mr. Cope premised his conclusions on estimates of replacement value prepared by persons who were not made available for cross-examination. This fact coupled with the great divergence of the replacement cost estimate used by Mr. Cope from all the other replacement cost estimates submitted into evidence compels us to disregard the conclusions of Mr. Cope as to the actual cash value of the main building. A good deal of evidence was presented concerning the materials used in the building. The Court feels they are of substantial quality and would not deteriorate greatly over time. The trial court determined that the expert testimony of Mr. Summerall was entitled to the greatest weight. We accept this determination by the trial court and base our award of actual cash value for the loss of the main building on the amount of $330,000.00. We feel that depreciation of 11% is appropriate and thus award $293,700.00 as the actual cash value of the main building.
The machinery in the main building consisted of equipment used in the fertilizer plant. Much of the equipment was made of stainless steel. At the time of the loss some of the equipment was approximately three years old. The remainder of this equipment was not that old. The parties agree that the cost of these items lost equalled $74,022.43. The insurer tendered $63,525.81 which represents this cost less a depreciation factor of approximately 14%. Considering the evidence presented concerning this equipment we find no error in the award made by the trial court of $72,000.00.
The personal property lost was valued by both parties at a cost basis of $49,561.32. Five thousand ($5,000.00) was deducted from this figure and the remainder was depreciated by approximately 16% resulting in payment to the insured of $37,452.19 for these losses. The $5,000.00 pertains to lumber which was deducted because it was fully covered elsewhere. We find that the value tendered by the insured, $37,452.19, is correct in regard to this equipment considering the nature of the equipment and its greater susceptibility to physical deterioration.
It was agreed between the parties that the value of the inventory in the building was $159,950.00. Through salvage efforts $15,482.82 was paid to the plaintiff. *264 Thus, the resulting loss was $144,467.18. The insurer calculated the benefits owing to the plaintiff pursuant to the provisions of the stock reporting endorsement. We find this approach to be correct and we award $121,961.83 for the stock lost.
The trial court further awarded $1,064.00 which was stipulated to be the measure of damages to the rear building, $6,430.75 for expenses incurred in debris removal, and $953.00 for reconnection of electricity to the rear building. These amounts are correct.
Thus we amend the award of the trial court and make the following awards:

Main Building $293,700.00
Inventory 121,961.83
Machinery 72,000.00
Contents 37,452.19
Incidental Expenses 6,430.75
Lumber 5,000.00
Damage to Rear Building 1,064.00
Electrical Reconnection 953.00
TOTAL $538,561.77

In summary, we find that a total of $538,561.77 is appropriate to indemnify the plaintiff for the losses sustained. Against this amount we credit the deductibles provided in the policy totaling $2,000.00. We further credit against this amount the amounts tendered previously by the defendant and find that the difference of $102,558.00 is due the plaintiff.
The trial court awarded penalties and attorney's fees pursuant to the provisions of LSA-R.S. 22:658. That statute provided, prior to amendment by Acts 1985 No. 778, as follows:
"All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees."
The court below found that satisfactory proof of loss was received by the insurer on June 6, 1983. By this date, there is no doubt from the record that the defendant was aware that a loss had been suffered and that indeed it was a total loss.
John Love, on behalf of Hudson Insurance Company, inspected the insured property on June 6, 1983. Mr. Cagnina, from the same office, investigated the property on June 8, 1983. There was never any doubt that the main building was a total loss. With regard to this item of loss no further information other than that which Mr. Cagnina learned from his inspection on June 8, was required nor was any other information utilized by Mr. Cagnina except for the Marshall & Swift manual. This manual was available to Mr. Cagnina from the date of the fire, however, nothing was prepared concerning an evaluation of the main building until July 27, 1983. The evaluation prepared at that time was admittedly incorrect and was not corrected until the date of trial. The insurer's request that the plaintiff submit an evaluation of the main building does not justify its delay in adjusting the loss to the main building especially in view of the fact that the estimate submitted by the plaintiff was rejected entirely and was never considered in making the tender which was offered to *265 the plaintiff. The tender offered for the loss of the main building was calculated solely on the information obtained by Mr. Love and Mr. Cagnina on June 6 and June 8 together with the Marshall & Swift manual. All of this was obtained by June 6, 1983, yet no payment was tendered until September 26, 1983 which is beyond the statutory period.[1]
Our jurisprudence provides that no proof of loss in writing is essential under LSA-R.S. 22:658. Artigue v. Louisiana Farm Bureau Mutual Insurance Company 339 So.2d 880 (La.App. 3rd Cir.1976), writ denied 341 So.2d 1132 (La.1977). It is apparent from the record that repeated requests by Mr. Fontenot and Mr. Hopkins, on behalf of Mr. Fontenot, for forms to execute a written proof of loss went unanswered by the defendant. The record further reflects repeated demands by the insured for payment of the claims. We conclude as did the court below, that the insurer had received satisfactory proof of loss, as far as the loss of the main building, by June 6, 1983, and, hence, the 60 day period as provided in LSA-R.S. 22:658 began to run at that time. Tender of payment beyond 60 days as occurred here is untimely. The facts concerning the evaluation of the building loss further convinces us that the failure to tender payment was arbitrary and capricious and hence the defendants are liable for statutory penalties and attorney's fees.
Where an insurer fails to pay or tender part of a claim which is indisputably due, it is then liable for statutory penalties and attorney's fees on the entire claim sought by the insured. LSA-R.S. 22:658; Guillory v. New York Fire and Marine Insurance Company, 201 So.2d 366 (La. App. 3rd Cir.1967)
We conclude that the plaintiff is entitled to penalties of 12% on the entire amount of the loss (less deductible) which totals $536,561.77. Thus, penalties of $64,386.41 are awarded.
The trial court assessed attorney's fees of $22,500.00 in favor of the plaintiff. The plaintiff, in its answer, has requested additional attorney's fees for legal services required on appeal. The general rule is that a plaintiff who is successful below may request and be awarded additional attorney's fees when the defendant appeals and obtains no relief on appeal. Conlay v. Houston General Insurance Company, 370 So.2d 196 (La.App. 3rd Cir. 1979). Because we have amended the judgment of the trial court in favor of the defendant, we conclude no award of additional attorney's fees is warranted.
Judicial interest on the amount tendered by the defendants, $434,003.77, shall run from date of judicial demand through date of tender, September 26, 1983. Judicial interest on the remainder of the award made herein totaling $189,444.41 is awarded from date of judicial demand.
Costs on appeal are assessed against the appellee.
AFFIRMED AS AMENDED.
TEEKEL, J. Pro Tem., concurs in part and dissents in part and will assign reasons.
NOTES
[*] Judge Allen M. Babineaux of the Fifteenth Judicial District Court and Judge Lloyd G. Teekel of the Ninth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judges Pro Tempore.
[1] We do not reach the issues raised by plaintiff's counsel concerning the effective date of the tender because we find the tender was untimely even upon the date of receipt by plaintiff.