205 So.2d 867 (1967)
MIDDLE TENNESSEE COUNCIL, INC., BOY SCOUTS OF AMERICA, et al.
v.
Ralph M. FORD et al.
No. 7185.
Court of Appeal of Louisiana, First Circuit.
December 19, 1967.
Rehearing Denied January 29, 1968.
*869 G. Allen Kimball, of Jones, Kimball, Harper, Tete & Wetherill, Lake Charles, for appellants.
Victor A. Sachse, of Breazeale, Sachse & Wilson, Borron, Owen, Borron & Delahaye, Baton Rouge, for appellees.
Before LOTTINGER, SARTAIN and ELLIS, JJ.
LOTTINGER, Judge.
This is a suit brought by the universal legatees named in the will of Leslie G. Boxwell, to have declared the nullity of a sale of certain real property owned in indivision by the decedent and two of the defendants, which said property is located in the Parish of East Baton Rouge, State of Louisiana. The petitioners are the Middle Tennessee Council, Inc., Boy Scouts of America, The Trustees of the Middle Tennessee Council Foundation and Trust Fund, a trust organized and existing under laws of the State of Tennessee, successor to the Nashville Boy Scout Foundation, and the University of the South, all being absentees. The defendants are Ralph M. Ford and Mrs. Barbara Marie Hornbeck, both residents of the Parish of East Baton Rouge, and John J. Hooker, a resident of the State of Tennessee.
The Lower Court granted a summary judgment in favor of defendants and against petitioners, and maintained various exceptions filed by defendants. The petitioners have taken this appeal.
The record discloses that Leslie G. Boxwell, a resident of the State of Tennessee, owned an undivided one-third interest in certain real estate situated in the Parish of East Baton Rouge, State of Louisiana. His last will and testament provided for several special legacies and named the petitioners and/or their predecessors as residuary legatees to receive the residuum of decedent's estate, in the proportions of one-fourth thereto to Nashville Council Boy Scouts of America (all of whose rights are now vested in petitioner, Middle Tennessee Council, Inc., Boy Scouts of America as its successor), one-fourth to the Trustees of the Nashville Boy Scout Foundation (all of *870 whose rights to which are now vested in petitioners, the Trustees of the Middle Tennessee Council Foundation and Trust Fund, as their successor), one-fourth to the University of the South, to be used for scholarship purposes and one-fourth to the University of the South to be used for such purposes as it deems best. This last will and testament designated the defendant, John J. Hooker, as executor thereof, with power to sell such portions of decedent's estate as necessary to "effect the distribution" therein "provided for".
Following the death of Mr. Boxwell, the succession was opened and defendant, John J. Hooker, was qualified as executor under the laws of the State of Tennessee. Subsequent thereto, in a proceeding entitled "Succession of Leslie G. Boxwell" on the probate docket of the Nineteenth Judicial District Court in and for the Parish of East Baton Rouge, Louisiana, an ancillary proceeding was opened, the effect and validity of which proceedings are at issue herein. During the course of this proceeding, no attorney ad hoc was appointed by the Court to represent the absent legatees until the filing of the final account, however, prior thereto and during the course of this succession proceeding, the executor petitioned for and received the authority of the Court to sell decedent's undivided one-third interest in the East Baton Rouge property at a private sale for the price and sum of $35,000.00. Ownership in this property prior to the said sale was in the interest of an undivided one-third to each of the following: Ralph M. Ford, James Thomas, the father of defendant, Barbara Thomas Hornbeck, and the estate of decedent. By virtue of this sale the decedent's one-third interest therein was sold to defendants, Ralph M. Ford, and Mrs. Rosalie Segari Thomas. Mrs. Thomas has since died and is represented herein by her sole child and heir, defendant Barbara Thomas Hornbeck.
The petition attacks the validity of the sale on the following grounds:
(a) That they received no advance notice of the sale, and had no knowledge either of it or the ancillary proceeding until some four months after the sale, when they were notified, by a curator appointed on July 17, 1962, of the filing of the executor's final account, and that, consequently, they had no opportunity to exercise their legal right to make protest of the sale.
(b) At the time of the sale, there was in the hands of the executor or due him from the probate of decedent's estate, funds more than sufficient to pay all cash legacies and other obligations of the estate, and the sale of said property was not necessary, and the executor had, therefore, exceeded his legal authority in selling or attempting to sell the property.
(c) The property sold had a market value at the time of the sale of $232,200.00 ($5400.00 per acre) or more, and such value was well known to defendant, Ford and to the mother of defendant, Mrs. Hornbeck, and was known actually and constructively, by defendant, Hooker because defendant, Ford had made sales of comparable property from his wholly owned adjoining tract to East Baton Rouge School Board on January 25, 1954, of 14.18 acres for $77,000.00 ($5,430.18 per acre) and to Joseph M. Myatt on November 1, 1957, of 9.92 acres for $120,000.00 ($12,096.77 per acre) by deeds recorded in the Conveyance records of East Baton Rouge Parish.
(d) Plaintiffs, having been without knowledge of property values in the Baton Rouge area, by proper inquiry secured information thereon, and on December 20, 1965, made demand upon defendant, Hooker to bring suit for the rescission of the sale in question, and he refused to do so.
(e) Because of the wrongful sale of the property, without notice to the plaintiffs, at a grossly inadequate price of less than one-half its value, the sale should, in order to avoid great loss to plaintiffs, be revoked *871 as an absolute nullity, or, alternatively, be rescinded for lesion beyond one-fourth as an attempted partition, or for lesion beyond moiety.
The petitioners prayed for relief, accordingly and asked that an attorney at law be appointed as curator to represent the absent defendant, John J. Hooker.
Defendant Hooker filed exceptions to service of process and jurisdiction rationae personae, claiming that the Louisiana Courts had discharged him as executor and that he was therefore not subject to Louisiana jurisdiction. Defendants, Ford and Hornbeck, filed an exception of no cause of action, motion for summary judgment and plea of prescription.
At the hearing on the motion for summary judgment, the entire record of the ancillary proceeding in the Succession of Leslie G. Boxwell, including a copy of the decedent's will was introduced into the record. The plea of prescription was not passed on by the Trial Court, which, however, rendered judgment sustaining the exception of no cause of action and granted the motion for summary judgment. From this judgment, petitioners have appealed.
The petitioners contend that the Trial Court erred in the following respects:
(1) In sustaining defendant, Hooker's exceptions to jurisdiction rationae personae and service of process.
(2) In sustaining the exception of no cause of action and granting the motion for summary judgment filed by defendants, Ford and Hornbeck.
(3) In failing to hold that the allegations of the petition were sufficient to support plaintiffs' demands that the sale in question be set aside,
(a) As an absolute nullity because of the gross inadequacy of price and bad faith of defendants, coupled with the relative nullities resulting from lack of notice to plaintiffs of the proposed sale and the selling of the property by defendant, Hooker without testamentary authority.
(b) For lesion beyond one-fourth, as an attempted partition of property between co-owners, or
(c) For lesion beyond moiety.
(4) Ruling that the will by its terms,
(a) Empowered defendant, Hooker as executor, to sell the property in question at a grossly inadequate price and without need of funds for payment of cash bequests and debts of the estate, and
(b) Showed an intention that the residuary legatees should receive no property other than cash.
(5) In holding that the private sale of the property made under C.C.P. Arts. 3281 et seq., to be a judicial sale within the meaning of C.C. Art. 2594.
(6) In failing to reserve to petitioners their right to proceed against defendant, John J. Hooker in the Courts of Tennessee on demands arising from, or connected with, the Estate and Succession of Leslie G. Boxwell, deceased, as prayed for.
The first question to be disposed of relates to the exceptions to jurisdiction and service of process filed by the absent executor, defendant, John J. Hooker.
A judgment was signed by the Lower Court in the proceeding entitled "Succession of Leslie G. Boxwell" on the fifteenth day of August, 1962, homologating the final account and discharging and relieving the executor, John J. Hooker, from further trust and liability in said proceeding. It is this defendant's contention that by the Court so discharging him, he is no longer subject to the jurisdiction of this Court and that, therefore, his exception should have been maintained. In so holding, the Lower Court based its decision on Molero v. Bass et al., La.App., 190 So.2d 141.
The Molero case involved an unliquidated claim by a creditor of the deceased whose *872 rights had been relegated to an action against the heirs of the deceased because of the failure to file the claim against the succession or to make opposition to the executor's final account. The suit was filed some two years after the executor was discharged from the succession proceeding. There, as is the case before us, the succession proceeding was an ancillary one, the deceased being a resident of Texas, and the foreign executor was qualified in the State of Louisiana.
An exception to the jurisdiction was filed by the foreign executor, and in maintaining the exception, the Lower Court said:
"LSA-C.C.P. art. 3392 provides:
`The judgment discharging the succession representative relieves him of further duty, responsibility, and authority as succession respresentative.'
While it is true that any liability a representative may have incurred during his administration remains in effect, his relation to the succession is terminated. Thus a representative may be held personally liable, but he cannot be required to represent the succession in a claim against it. In this case appellee's claim is against the succession, based on an allegation that the decedent breached a contract with plaintiff's testator. This is not a cause of action against the executors personally, and they cannot be required to defend it after their authority and responsibility in the succession proceeding has ended."
Thus we find that in the Molero case the suit was against the succession, while in the case before us the suit is against the executor personally.
We believe that the law germane to the present actual situation is as set forth in Arts. 6 and 5091 of the Louisiana Code of Civil Procedure. In interpreting Art. 6, the Court, in Succession of Simms, La.App., 175 So.2d 113, commented as follows:
"The non-resident defendants also pleaded an exception to the jurisdiction of the court ratione personae, predicated upon the fact that they are domiciled in Harris County, Texas, and therefore are not amenable to Louisiana service of process.
Jurisdiction over the person is provided for in Art. 6 of the LSA-Code of Civil Procedure, which reads:
`Jurisdiction over the person is the legal power and authority of a court to render a personal judgment against a party to an action or proceeding. This jurisdiction must be based upon:
(1) The service of process on the defendant, or on his agent for the service of process;
(2) The service of process on the attorney at law appointed by the court to defend an action or proceeding brought against an absent or incompetent defendant who is domiciled in this state; or
(3) The submission of the party to the exercise of jurisdiction over him personally by the court, or his express or implied waiver of objections thereto.'
It has been emphasized in the editorial comments applicable to this article, that the concept of jurisdiction over the person was made part of the procedural law of Louisiana as one of the requirements of due process of law in the case of Pennoyer v. Neff, (95 U.S. 714, 24 L.Ed. 565). Since the rendition of that decision, an avalanche of jurisprudence has emanated from tribunals, both high and low, in an effort to establish as guidelines, in one situation or another, the exact limitations of the doctrine enunciated therein.
In any event, the most recent rationalization upon the subject emanates from the case of McGee v. International Life Insurance Company, (355 U.S. 220, 78 S. Ct. 199, 2 L.Ed.2d 223), wherein the organ of the court, quoting International *873 Shoe Co. v. State of Washington, (326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95), stated that the test to be applied is as follows:
`* * * "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice'" Id., 326 U.S. at page 316, 66 S.Ct. at page 158.'
In applying the foregoing reasoning to the facts hereof, the record reveals that the defendants voluntarily qualified as executors in the Louisiana proceedings ancillary to the Texas estate of the decedent and processed the administration thereof to a judgment of possession. After obtaining that judgment the defendants filed a motion to fix additional inheritance taxes, a motion to cancel a surety bond, and an application for authority to sign an extension of a mortgage note and a mortgage and pledge which they had executed together with other parties on July 25, 1958, which, to reiterate for the purpose of emphasis, was after the judgment of possession. Shortly before this suit was instituted, they filed a petition to withdraw the application for authority to sign the extension of the mortgage and pledge, and in this petition they designated themselves as former executors and declared that they had become functus officio by virtue of the judgment of possession.
Under Art. 2931 of the LSA-Code of Civil Procedure the proper parties defendant in an action to annul a probated testament are the legatees, the residuary heir, if any, and the executor, if he has not been discharged. Therefore, one of the many questions posed for our consideration herein is whether the defendants, as executors and legatees, have, in fact, possessed the minimum contacts with the State of Louisiana so as not to offend the traditional notions of fair play and substantial justice.
A laborious analysis of the foregoing facts is unnecessary in view of the rationale emanating from the McGee case. Therein, the defendant corporation did little more than write a policy of insurance, and this served as sufficient contact with the state to subject it to the process thereof.
In this case, the defendants have qualified as executors in the ancillary proceeding to administer Louisiana property in conformity with Louisiana Law. Moreover, those of the defendants who are heirs claim property rights under the decedent's will to Louisiana property. Under these circumstances, it is clear that the defendants possess the minimum contacts necessary to satisfy the requirements of due process of law in the area of jurisdiction ratione personae.

Therefore, we are of the opinion that the lower court ruled correctly in dismissing the defendants' exceptions to the jurisdiction ratione personae."

In affirming this decision, the Supreme Court, in 250 La. 177, 195 So.2d 114, said:
"In a well considered opinion the trial judge correctly disposed of all of these exceptions, holding: (1) The court had jurisdiction rationae personae as the succession proceeding did not terminate with the rendition of the judgment of possession, numerous steps having to be taken thereafter by the executors in furtherance of their duties as such; in addition, that they had sufficient contact with the court to be subject to its jurisdiction under Article 6 of the Code of Civil Procedure in the light of the holding in McGee v. International Life Ins. Co., 355 U.S. 220, 73 S.Ct. 199, 2 L.Ed.2d 223 (see, also, Morrison v. New Hampshire Co., No. 48,077 on our docket, handed down June 6, 1966, 249 La. 546, 187 So.2d 729."
Further support for this reasoning is found in the provisions of Art. 5091 of the *874 Louisiana Code of Civil Procedure, the pertinent portions of which provide as follows:
"The court shall appoint an attorney at law to represent the defendant, on the petition or ex parte written motion of the plaintiff, when:
(1) It has jurisdiction over the person or property of the defendant, or over the status involved, and the defendant is:
(a) A non-resident or absentee who has not been served with process, either personally or through an agent for the service of process, and who has made no general appearance; * * *.
All proceedings against such a defendant shall be conducted contradictorily against the attorney at law appointed by the court to represent him." (Emphasis ours.)
This article is clearly applicable in this case as we are concerned not only with immovable property located within the jurisdiction of the Court, but also with the status or validity of ownership of such property.
The liability of the defendant, Hooker for his acts as executor still exist in spite of his discharge as Louisiana executor, and so does his duty and responsibility to recoup for decedent's estate and for the residuary legatees the loss caused by his alleged wrongful sale of the property in question. The official reporter's comments under Art. 3392 of the Louisiana Code of Civil Procedure, providing for the discharge of administrators state:
"Since the judgment of discharge is rendered ex parte, it has no effect other than to relieve the representative of further responsibility and authority. Succession of Quaglino, 223 La. 171, 65 So.2d 127 (1953). Whatever liability of the representative or his surety may have existed prior to discharge remains in effect. * * *."
In the Succession of Overby, 28 La.Ann. 820, the Court said:
"* * * it is repugnant to reason and to justice to suppose, that one who administers a succession by virtue of his office of public administrator can escape responsibility for his maladministration because he no longer holds the office of public administrator."
The record discloses that this defendant has not been discharged as executor of the succession in the State of Tennessee, and that he is, therefore, still the legal representative of the decedent's estate. In Atkinson v. Rogers, 14 La.Ann. 633, the Court said:
"If immovable property in this state is in the possession of a foreign executor, and a testamentary disposition has been made of it, not in accordance with our laws, the legal heir may sue such executor directly for its recovery in the courts of this state, and is not obliged to resort to the tribunals of the testator's domicile, to ascertain the validity of the disposition intended to deprive him of his right to immovable property within our jurisdiction."
Furthermore, the facts alleged in the petition indicate that the sale of the property was an absolute nullity. Under the laws of our jurisdiction, this allegation must be taken as true in disposing of the exception. This being so, the defendants acquired no title to the property. Title to the property would, therefore, still be vested in petitioners as residuary legatees subject to the executor's right of possession pending the distribution thereof. Conceding, for the sake of argument, that the executor does not have actual possession of the property, he does possess the right belonging to the residuary legatees to attack the sale and claim title thereto, and this is a real right. Louisiana Civil Code, Art. 470; Scott v. Howell, 177 La. 137, 148 So. 6. The jurisprudence, further, provides that all parties to a sale, including succession representatives, are necessary parties to a suit to annul *875 the sale. Heirs of Burney v. Ludeling, 41 La.Ann. 627, 6 So. 248; Herrmann and Vigness v. Fontelieu, 29 La.Ann. 502.
We, therefore, find that the executor is a proper party defendant, and is necessary in order to maintain the action for recovery of the property allegedly wrongfully disposed of by him, even without regard to the question of fraud or conspiracy.
The maintenance of the exceptions would produce the highly inequitable and repugnant result of depriving an heir or legatee of the right to have a foreign executor answer for acts of misfeasance or maladministration in the Court by which he was authorized to act as succession representative or to secure a correction of his wrongful acts. We, therefore, feel that the Lower Court erred in maintaining the exception of jurisdiction and service of process.
The second specification of error was the action of the Lower Court in sustaining the exception of no cause of action and granting the motion for a summary judgment filed by defendants, Ford and Hornbeck. The petitioners contend that the Lower Court erred in holding that the legatees were not devised property but were devised value of the property as left to them, and, in order that they might receive the value, it was necessary that the executor sell the property. The petitioners contend that the legatees were devised property and not value and argued in the alternative that even if the findings of the Lower Court were correct, there would still be no justification for the dismissal of plaintiff's suit, because testamentary authorization to sell succession property could not justify the waste and maladministration resulting from defendant, Hooker's sale of the property here in question for a small fraction of its actual value, or deprive plaintiffs of their legal right to secure a rescission thereof.
The last will and testament of decedent comprises eight typewritten pages. There are four codicils thereto comprising an aggregate of twelve additional typewritten pages. The decedent first made certain specific bequests, and then made residual bequests to the petitioners herein. These bequests to petitioner as provided in the original will and the various codicils thereto, at the time of death of decedent provided as follows:
"All the rest, residue and remainder of my estate, real, personal and mixed, I hereby give, devise and bequeath as follows:
(a) one-fourth (¼) of the said property in value I hereby give, devise and bequeath to Nashville Council Boy Scouts of America, a Tennessee Corporation, or its successor Corporation. I direct that this said bequest shall be used by the said corporation for the purpose of improving or maintaining a camp site for Boy Scouts in or near Nashville, Tennessee. * * *
(b) One-fourth (¼) of the said property in value I hereby give, devise and bequeath to the then acting trustees of the Nashville Boy Scout Foundation as such trustees to be used as a part of the trust known as the "Nashville Boy Scout Foundation" pursuant to a declaration of trust entered into in December of 1947. * *
(c) One-fourth (¼) of the said property in value I hereby give, devise and bequeath to the University of the South at Sewanee, Tennessee, and I request that this said bequest either principle or interest, or both, be used by the said university for the purposes of granting scholarships to the university upon such terms and conditions as the university deems fit and proper. * * *
(d) One-fourth (¼) of the said property in value I hereby give, devise and bequeath to the University of the South at Sewanee, Tennessee, to be used by said university for such purposes as it deems best * * *
"* * * I direct that the executor shall have the power to sell such portion of my estate as may be necessary in the *876 judgment of the executor to effect the distribution herein provided for, and I give full power to the executor to make such sales upon such terms and conditions as he deems best and to give such deeds or other muniments of title as may be necessary to effect the same."
The Lower Court held that the legatees were not devised property but were devised value of the property as left to them; and in order that they might receive the value, it was necessary that the executor sell the property, which he did under an order of Court, and that he did this under the provision of the will above quoted.
The new Random House Dictionary defines "value" as "The relative worth, merit, or importance; * * * monetary or material worth," when used as a noun, and "To calculate or reckon the monetary value of; * * * assess; appraise,", when used as a verb. Black's Law Dictionary, on the other hand, defines the term "value" as "The utility of an object in satisfying, directly or indirectly, the needs or desires of human beings, called by economists `value in use;' or its worth consisting in the power of purchasing other objects, called `value in exchange.' Also the estimated or appraised worth of any object of property calculated in money."
We are convinced by the provisions of the last will and testament, as well as its various codicils, that it was not the intention of the testator to sell the property, other than to pay debts or legacies as are provided in said will. The original will provides, in making the bequests to the Nashville Council, Boy Scouts of America, that "said bequests shall be used by the said corporation for the purpose of improving, purchasing or maintaining a camp site for Boy Scouts * * *" (Emphasis ours) in the codicil of the last will and testament, this phrase was amended to read that "* * * said bequests shall be used by the said corporation for the purpose of improving or maintaining a camp site for Boy Scouts * * *". It is reasonable to believe that the omission of the word "purchasing" from the rewritten will was deliberately done, and that the maintaining or improving of the camp in question could well have been taken care of by revenues from the legatee's portion of the remainder of the estate received in kind. Also noted is the provision in this section that the bequest shall be "paid over or delivered" to the legatee, further indicating the intent to bequeath property "real, personal and mixed," including any cash on hand.
The will and its codicils comprise some twenty typewritten pages. Had it been the intention of the testator to bequeath cash in lieu of property to petitioner, we feel that he would have so provided in no uncertain terms. The executor was given the right to sell such portion of the property "as may be necessary in the judgment of the executor to effect the distribution" therein provided for. According to the petition, there was sufficient cash funds in the estate to pay all debts and cash legacies. There was, therefore, no necessity to sell the property. Such sale, we might say, was merely the whim of the executor.
Article 3261 of the Louisiana Code of Civil Procedure, however, provides that a succession representative "may sell succession property in order to pay debts and legacies, or for any other purpose, when authorized by the court as provided in this Chapter." The Supreme Court, in the Succession of Pipitone, 204 La. 391, 15 So.2d 801, in interpreting the provisions of Act 290 of the Louisiana Legislature of 1938 (now C.C.P. 3261), commented as follows:
"In the first place, it is declared in the act itself that a private sale may be made `in order to pay debts or legacies, or both, or for any other purpose.' This phrase `for any other purpose' means, of course, for any other lawful purpose, or reason of necessity. It does not give an executor or administrator carte blanche to sell succession property for any purpose or reason that he may deem sufficient, as the agent for the heirs or creditors or legatees. * * * The purpose of the lawmaker in *877 adding the phrase `or for any other purpose' was to make a provision for any legitimate purpose that might arise for disposing of the property, besides the purpose of paying debts or legacies."
Conceding, however, that the executor in this case did have the right under the laws of our State to sell the property at private sale, he certainly was not given the right to sell such property for a woefully and inadequate consideration.
According to the editor's preliminary statement to Article 3171, "the failure to appoint an attorney for absent heirs when one should have been appointed is a relative nullity which is prescribed in two years." Coupled with the failure of the executor to have an attorney appointed to represent the absent heirs, was the disqualifying failure of the executor to appoint an agent for service of process to represent him as required by Article 3097 (4) of the Louisiana Code of Civil Procedure.
While Article 3543 of the Louisiana Civil Code provides for a two year prescriptive period to cure defects in Court authorized sales, the benefit of this prescription is available only to purchasers in good faith. In so holding, the Court, in Bordelon v. Bordelon, La.App., 180 So.2d 855, commented as follows:
"The benefit of prescription under LSA-C.C.Art. 3543 is available only to purchasers in good faith. This prescription curing irregularities in a public sale is not available to a purchaser in legal bad faith; in such latter instance, it is immaterial whether the defects are relative or radical nullities because the bad faith purchaser at the succession sale is in neither case shielded by the article's prescription. * * *
Nevertheless, we have concluded that, under the factual allegations of the petition, a defect of substance is alleged affecting the sheriff's sale with absolute nullity, requiring us to overrule the exception of prescription even as to these good faith subsequent purchasers. * * *
The absolute nullity to which we refer is the sale of succession property not only for less than two-thirds of its appraisementwhich by itself is only a relative nullity, see below, but also under the allegations of the petition for much less than half of the property's true and actual value at the time of the sale * * *.
Even though succession property has been sold at less than two-thirds of its appraised value, this has been held to be a relative nullity cured by the prescription of Art. 3543, provided that the property is at least sold for its actual value, for then neither fraud nor injury to the previous owner is shown. Arceneaux v. Cormier, 175 La. 941, 144 So. 722. Nevertheless, as this decision recognizes, if in addition to being sold for less than this legally required minimum price, the property is sold for less also than its actual value at the time and under the circumstances, then the succession sale of the property is absolutely null, and this is a defect of substance not cured by the prescription of Art. 3543." 180 So.2d p. 859.
Defendants contend, however, that the words "fraud" or "bad faith" is not contained in the petition filed herein and that, therefore, the doctrine as set forth in the Bordelon case does not apply. Although it is true that such terms were not used in the petition, the allegations thereof that (1) defendant, Hooker knowingly sold the property for a grossly inadequate price without giving plaintiffs prior notice thereof and exceeded his authority in so doing, and (2) that defendant, Ford and his co-purchaser, Mrs. Thomas, knew at the time of the purchase that the property was worth more than six and one-half times the price paid by them, quite clearly showed bad faith on the part of all three parties to the transaction.
Article 891 of the Louisiana Code of Civil Procedure provides that a petition *878 shall contain a "concise statement of the object of demand and of the material facts upon which the cause of action is based." The jurisprudence of this state has long been to the effect that facts, not conclusions of law, should be pleaded. In State v. Hackley, Hume and Joyce, 124 La. 854, 50 So. 772, the Court said:
"To say that the defendants or holders in bad faith is not to allege a fact, but merely a conclusion of law. * * *
The said allegation of the defendants being holders in bad faith, or in other words, of their title being vicious or defective and their knowing it, being nothing more than the allegations of a conclusion of law, is no allegation at all, since the allegation of a conclusion of law is no allegation. It `does not aid a pleading.' 31 CYC. 51. `Facts, not conclusions of law must be alleged in pleadings.' Id. An exception of no cause of action admits the well-pleaded facts, not the conclusions of law, contained in the petition."
The petition filed herein states that the property of the legatees was sold for the price and sum of $35,000.00. Paragraph 8 of said petition further states that at the time of the sale the market value of the decedent's one-third interest in the said property was $232,200.00, and that this was well known by the defendants, Ford and Thomas, and was known, actually or constructively, by defendant, Hooker, because Ford had made sales of comparable property at some six and one-half times the price of the sale which is here questioned. Such an allegation on the part of the petitioners clearly set forth that the sale was clearly tainted with the legal conclusion of fraud or conspiracy.
In Bordelon v. Bordelon (Supra); and Huckaby v. Huckaby, 134 La. 107, 63 So. 755; and Thibodeaux v. Thibodeaux, 112 La. 906, 36 So. 800, where there was no suggestion of fraud or bad faith, the Court applied the "defect of substance" rule as a ground for annulment. In Succession of Cole, 231 La. 280, 91 So.2d 346, a similar ruling was made where the petitioner demanded the rescission and nullity of succession proceedings founded on allegations of fraud, misrepresentation, and malfeasance of the administrator, the Court saying:
"Courts of equity will not permit one party to take advantage of and enjoy the gains of ignorance or mistake of law by the other, which he knew of and did not correct, especially when a confidential or fiduciary relation existed between them, Pomeroy, Equity Juris. vol. 2, pars. 847, 848, 849, 956."
In opposition to the contention by the petitioners that the sale of the property is subject to rescission for lesion beyond one-fourth, as is provided by Articles 1397 and 1398 of the Civil Code, and for lesion beyond moiety, as is provided under Articles 1860 and 1861 of the Civil Code, the defendant cites Article 1869 of the Civil Code which provides that:
"No lesion whatever, even in the case of minors, can invalidate judicial sales, or sales of an insolvent's property made by syndics or other trustees. Sales of property belonging to successions or minors, directed or authorized by courts, are judicial sales under this provision." (Emphasis ours.)
and Article 2594 of the Civil Code which provides that:
"Rescission for lesion beyond moiety is not granted against sales of movables and produce, nor when rights to a succession have been sold to a stranger, nor in matter of transfer of credits, nor against sales of immovable property made by virtue of any decree or process of a court of justice." (Emphasis ours.)
Under the clear holding of Prestridge v. Humble Oil and Refining Company, La.App., 131 So.2d 810, the sale with which we are now concerned was clearly a "private sale" and not a judicial sale. The Prestridge case involved the sale of a minor's interest in a piece of property authorized by the order of Court to be sold *879 at private sale. In holding the sale to be a "private" one the Court said:
"This argument is without merit. Although the conveyance in question was made pursuant to order of court, it was a private and not a public sale. Our original opinion herein discusses the origin and purpose of Act 209 of 1932 which provided a procedure for the `private sale' of a minor's property. Such a conveyance is a private contract and not a sale at public auction made by a sheriff, a licensed auctioneer or other persons authorized by order of the courts of this state to sell at public auction within the meaning of LSA-Civil Code, Article 3543 which provides for two and five years prescription as to informalities in auction sales. Clearly, Article 3542, and not Article 3543, is applicable here."
The same reasoning as set forth in the Prestridge case would be applicable here. See also Planiol Civil Law Treatise, Louisiana State Law Institute, Volume 2, Part 1, Article 1589, which is as follows:
"Sales which give Occasion for Rescission
In conformity with tradition, rescission is not possible except for sales of immovables. Art. 1674 says so expressly, by stating that the vendor suffers lesion `in the price of an immovable.' And further, such an action is not admitted in every case involving sale of an immovable. In fact an exception should be made in two kinds of sales:
(1) Sales Subject to Chance. These are sales made for an annuity for life. There is a risk to be run by the two parties: the thing may cost the buyer very much or he may get it for very little money; that depends on the time that the annuity runs. The possibility of lesion is naturally involved in this contract, which is invalid (Rennes, 3 July 1923, Gaz. Palais, 18 Nov. 1923). That presupposes, however, that the annuity stipulated is substantially greater than the revenues of the immovable, without which the sale would be null for lack of a price (Nimes, 3 Dec. 1928, D.H.19229, 138) (supra, No. 1381). See also Nancy, 6 July 1907, D.1907.2.367. It is the same in sales made with a reservation of the usufruct for the benefit of the vendor (Amiens, 12 June 1928, 486. See Cass.Civ. 10 Jan. 1913, D.1913.1.216).
(2) Sales made by Authority of the Court (Art. 1684). The reason for this exception appears to have been based on the guaranties which this kind of sale offers because of its publicity. `The just price of things,' said Pothier `is the price at which they can be sold.' Furthermore when the auction has not produced favorable results, there is a special proceeding, the `re-auction of the sixth,' which permits raising the price of the adjudication (Art. 708, C.Proc.Civil). To annul the sale and to proced to a new adjudication would augment the expenses considerably, and probably would not give a better result. Art. 1684 reproduces a traditional rule (Pothier, Vente, No. 340).

Furthermore, this exception does not apply to all judicial sales but only those which, according to the law, can only be made by authority of the court. Such are sales upon seizure, sales of property of minors or of interdicts, and sales in case involving the acceptance of a succession under benefit of inventory. (Cass.Req., 7 Nov. 1927, D.1928.1.43, with the report of M. Pringue). But judicial sales which could just as well have been made privately remain subject to the general rules of law and are rescindable for lesion." (Emphasis ours.)
Nor are we impressed with the argument by defendant that, under the provisions of Article 2594, rescission for lesion does not apply because here we have a situation where "rights to a succession have been sold to a stranger." The sale in question was not one of "rights to a succession." It was a sale of immovable property. Nor was the sale made to a "stranger"it was made to co-owners.
*880 The record discloses that the sale was made on March 22, 1962, and that the petition herein was filed on March 7, 1966, the lapse being less than four years. Thus we find that regardless of whether this would be considered a sale at partition or a regular sale, we believe that the petition was timely filed. A sale at partition would be covered by Article 1413 of the Civil Code which provides as follows:
"Suits for the rescission of partitions are prescribed by the lapse of five years from the date thereof, and in case of error and fraud, from the day in which they are discovered."
and Article 1414 which provides as follows:
"This prescription, in case of lesion, runs against minors as well as against persons of age, when the partition has been made judicially and with all the forms prescribed by law."
Thus the action for rescission of a partition sale for lesion would prescribe in five years.
Article 1876 of the Civil Code dealing with regular sales, provides as follows:
"Actions for lesion are limited to four years, to date from the time of the contract between the persons of full age, and from the age of majority in contracts of minors."
We therefore feel that the petitioner's action has not prescribed under the clear provisions of the above cited articles of the Louisiana Civil Code.
For the reasons hereinabove assigned, the judgment of the Lower Court will be reversed, and this matter is hereby remanded to the Lower Court for trial on the merits. All costs of this appeal shall be paid by defendants.
Judgment reversed and remanded.