ELLIS, Judge:
Leslie G. Boxwell died on September 24, 1960. In his will, he named Middle Tennessee Council, Inc., Boy Scouts of America, and Trustees of the Middle Tennessee Council Foundation and Trust Fund as residuary legatees for an undivided one fourth each of his estate, and the University of the South as residuary legatee for the remaining undivided one half of his estate. He named John J. Hooker as Executor thereof.
Included among his properties was an undivided one third interest in 129 acres of land in East Baton Rouge Parish, which he owned in indivisión with Ralph M. Ford and Mrs. Rosalie S. Thomas. On March 22, 1962, Mr. Hooker, acting with the authorization of the 19th Judicial District Court for East Baton Rouge Parish, sold Mr. Boxwell’s one third interest to Mr. Ford and Mrs. Thomas for a consideration of $35,000.00.
This suit was filed on March 7, 1966, by the three residuary legatees of Mr. Box-well’s estate, against Mr. Hooker, Mr. Ford, and Mrs. Barbara Marie Hornbeak, heir of Mrs. Thomas, to set aside the sale. Various exceptions were filed by the defendants, which were maintained by the trial court, and the suit dismissed. The judgment of dismissal was appealed to this court, and we reversed and remanded the case for trial on its merits. See Middle Tennessee Council, Inc., Boy Scouts of America, et al. v. Ford, 205 So.2d 867 (La.App. 1 Cir. 1967). Trial was held on the merits, and once again the suit was dismissed. Plaintiffs have appealed to this court.
In their original petition, the plaintiffs allege that the sale of Mr. Boxwell’s undivided interest should be set aside because at the time of the sale the Executor was without authority to make the sale, and because he failed to appoint a Curator to represent plaintiffs until July 17, 1962, four months after the sale took place. In addition, they allege that the sale was invalid for lesion beyond moiety or, alternatively, for lesion beyond one fourth as an attempted partition.
The defendants denied the necessity for the appointment of a Curator and entered a plea of the prescription of two years to the invalidity of the sale because of their failure to do so, and as to other alleged in-formalities in the succession proceeding.
The record shows that Mr. Boxwell’s will was probated in Tennessee and letters testimentary issued to Mr. Hooker on September 29, 1960. Although there is a difference in the testimony of Mr. Ford and Mr. Hooker as to who initiated the negotiations between the parties as to the purchase of the property, the record appears to support the conclusion that Mr. Ford made an offer to purchase the one third undivided interest for $35,000.00, and issued a check on June 26, 1961, for that amount which he sent to Mr. Hooker. Mr. Hooker came to Baton Rouge on or about July 7, 1961, where he saw Mr. H. H. Manner, Boxwell’s former partner. Mr. *660 Manner put him in touch with Parker Meade, a real estate broker in Baton Rouge, who had made an appraisal of the property at Mr. Manner’s request. According to Mr. Hooker, Mr. Meade told him that $35,000.00 was a fair price for an undivided one third interest in the property. Mr. Meade’s own testimony is that he told Mr. Hooker that the property was worth between $800.00 and $1,000.00 per acre.
By letter of July 24, 1961, Mr. Hooker advised Mr. Ford that he would accept the $35,000.00, “provided, upon proper proof, this sale is approved by the Louisiana Court as being at a fair price.” An ancillary succession proceeding was commenced on November 6, 1961, in Louisiana. Mr. Hooker qualified as the Executor of the estate pursuant to the terms thereof, and on November 17, 1961, petitioned for authority to sell the undivided one third interest for $35,000.00 cash. It is alleged in the petition that the sale was necessary in order to pay legacies provided by the will. No request was made to appoint an attorney to represent the absent legatees under Article 3171 of the Code of Civil Procedure. The application was advertised in the paper as required by law, and no opposition was filed thereto. The application was approved on March 8, 1962.
As hereinabove set forth, the sale took place on March 22, 1962, and thereafter a final tableau of distribution was filed, advertised, approved, and eventually the Executor was discharged. The final account filed by him was served on W. P. Wray, Jr., who had been appointed attorney to represent the absent legatees on July 16, 1962. Mr. Wray, on July 25, 1962, advised the legatees of the proceeding. According to the legatees, this was the first notice they had of the existence of any property in Louisiana, or of any attempt to sell same. In 1965, the legatees for the first time raised the question as to the propriety of the sale to Mr. Ford and Mrs. Thomas. Mr. Hooker, as Executor, declined to take part in the attempt to set the sale aside, and was made a party defendant together with the purchasers of the property when this suit was filed on March 7, 1966.
We are faced with two major questions herein. First is the technical sufficiency of the ancillary succession proceedings, and second is the question of the adequacy of the consideration for the property.
As hereinabove set forth, plaintiffs point to the lack of authority of the Executor to sell under the will; the lack of necessity of the sale; and the failure of the Executor to appoint an attorney to represent them in the ancillary proceedings.
Defendants have properly characterized the foregoing defects as defects of form, or informalities in the proceedings, cured by the prescription of two years under Article 3543 of the Civil Code, which provides :
“All informalities of legal procedure connected with or growing out of any sale at public auction or at private sale of real or personal property made by any sheriff of the Parishes of this State, licensed auctioneer, or other persons authorized by an order of the courts of this State, to sell at public auction or at private sale, shall be prescribed against by those claiming under such sale after the lapse of two years from the time of making said sale, except where minors or interdicted persons were owners or part owners.”
Plaintiffs, however, claim that this prescription is available only to purchasers in good faith, as held by us in our former opinion herein, supra, 205 So.2d at p. 877. We must, therefore, determine whether or not the defendants were in bad faith in consummating the sale at the price of $35,000.00.
The record clearly negates bad faith on the part of Mr. Hooker. Both his testimony at the trial and the correspondence relative to the sale show that he was interested in obtaining a fair price for the property, that he made inquiry relative *661 thereto, and that he felt that his own j udgment was bolstered by court approval of the application to sell.
As to Mr. Ford, his testimony, taken by written interrogatories, reveals that he thought he was paying a fair price, based on his own experience. He did not believe that two prior sales by him of much smaller adjoining tracts for much higher prices were comparable in any respect. This latter opinion is borne out by the testimony of some of the experts who testified therein.
Mrs. Thomas and Mrs. Hornbeak, her daughter, were advised by the latter’s husband, who did not believe the acquisition at the price of $35,000.00 was a very good deal at the time.
We agree with the district judge that the preponderance of the evidence in the record does not negate good faith on the part of the defendants, and find them entitled to take advantage of the prescription of two years provided by Article 3543, supra. Since more than two years elapsed between the contested sale and the date this suit was instituted, the plea of prescription is good. We need not, therefore, look into the merits of the claim of technical insufficiencies in the ancillary succession proceedings.
Plaintiffs next claim that the sale is an absolute nullity because of the existence of a “defect of substance” in the sale. We do not believe this rule to be applicable to the instant case.
The “defect of substance” rule was first announced in the case of Thibodeaux v. Thibodeaux, 112 La. 906, 36 So. 800 (1904). The rule, which is jurisprudential in origin, is that a public sale of succession property for less than two thirds of its appraised value is a relative nullity cured by the prescription of two years under Article 3543, unless the sale is also for less than the actual value of the property. In the latter case, the defect is characterized as one of substance rather than form, and the sale is an absolute nullity. See Bordelon v. Bordelon, 180 So.2d 855 (La.App. 3 Cir. 1965).
We doubt the applicability of the foregoing rule to a private sale, in which the price is revealed to the court and published in the manner provided by law, prior to the sale, and which must be approved by the court before it can be executed. In either event, the sale was made for the value placed on the property in the descriptive list, which is the appraised value. The language in our first opinion herein, quoting the Bordelon case, was in connection with the applicability of Article 3543, and is dicta as to the point under consideration here.
With respect to the adequacy of the consideration, plaintiffs claim to be entitled to the rescission of the sale for lesion beyond moiety. Alternatively, they claim the sale to be, in fact, a partition, and they are entitled to a rescission thereof for lesion beyond one fourth. Defendants allege the sale to have been for a fair price. The price of $35,000.00 amounts to about $270.00 per acre for the one third interest, or just over $800.00 per acre for the whole.
Plaintiffs’ experts, three in number and impressive in qualifications, testified that the property as a whole was worth some $4,000.00 to $5,000.00 per acre at the time of the sale.
Defendants’ experts, three in number and equally impressive in qualifications, testified that the property as a whole was worth some $800.00 per acre at the time of the sale.
The district judge was unable to determine which, if either, group of experts was correct in its conclusion as to value. We find no manifest error in his conclusion that the plaintiffs failed to carry their burden of proof of showing the contested sale to be lesionary to any extent. Plaintiffs complain because the district judge failed to fix the value of the property in reach *662 ing this conclusion. We do not believe he is required to do so. Faced with greatly disparate expert testimony from opposing groups of experts of equal dignity and number, he may conclude that the preponderance of the evidence favors neither side. In such a case, the issue must be resolved against the party bearing the burden of proof, in this case, the plaintiffs.
The judgment appealed from is, accordingly, affirmed, at plaintiffs’ cost.
Affirmed.