DOMENGEAUX, Judge.
Mrs. Thelma E. Fogleman and Perry H. Fogleman sued Roy 0. Martin Industries, Inc., and Louisiana-Pacific Corporation to rescind a timber sale alleging lesion beyond moiety. The trial court rendered judgment in favor of plaintiffs, which entitled them to the difference between the amount originally paid (the lesionary price) and the fair market value at the time of the contract. The defendant lumber companies have appealed.
FACTS
In addition to other property, Perry H. Fogleman and his mother, Thelma E. Fogle-man, each owned an undivided one-half interest in a 580-acre tract of land located in St. Landry Parish.[1] Perry Fogleman’s interest in indivisión was subject to a surviving spouse usufruct in favor of his mother. In February, 1977, Mrs. Thelma E. Fogle-man, as tutrix of her minor son, Perry, applied to the district court for approval of the sale of standing timber, i.e., alienation of the minor’s interest in the immovable property. Under that tutorship, Mrs. Fo-gleman represented to the court that the price of $17,000.00, which was offered for both her interest and that of the minor’s in the timber, was fair and reasonable. The court authorized the sale by Mrs. Fogleman to Roy O. Martin Industries, Inc.[2] A timber deed was executed on February 9, 1977, under which terms the lumber company was permitted to cut and remove all trees 14-inches and larger in diameter, and 14-inches above the ground.
On March 29, 1979, Perry Fogleman attained majority; on August 29, 1979, petition and judgment were filed discharging Mrs. Fogleman as tutrix. Mrs. Fogleman then entered into an extension of the timber contract on her behalf and on behalf of Perry Fogleman, to which the latter consented. The original timber deed was due to expire on December 31,1980. The extension agreement proscribed that the cutting period would continue through December 31, 1981. Mrs. Fogleman and her son received an additional $2,000.00 for the extension agreement. The lumber company began logging operations in December, 1980.
On January 12, 1981, Mrs. Fogleman and Perry Fogleman filed the present suit against Roy O. Martin Industries and Louisiana-Pacific Corporation for rescission of the timber sale on the ground of lesion beyond moiety. Alternatively, plaintiffs sought a supplement in the purchase price. The district court issued a temporary restraining order which enjoined the timber cutting for four days, January 13-16, 1981. On January 19, 1981, the plaintiffs withdrew their request for injunctive relief. The district court dissolved the injunction; the motion to dissolve (previously filed by defendants) was declared moot in the order signed by the trial judge. Defendants reserved their claim for damages and wrong *956 ful issuance of the temporary restraining order.
The trial judge found that the timber sale was lesionary. In his written reasons for judgment he fixed the fair market value of the timber at $37,705.00. The trial judge credited $17,000.00 paid to the Foglemans from the original sale, but not the additional $2,000.00 paid for the timber deed extension. The plaintiffs were awarded $20,-705.00 plus costs,[3] less attorney’s fees assessed against them attributable to wrongful issuance of the temporary restraining order.
Defendants have appealed suspensively, submitting that the trial judge erred in finding: (a) that plaintiffs sustained the burden of proof of lesion beyond moiety, the timber sale was lesionary, and plaintiffs were entitled to a supplement in the purchase price; (b) that the experts’ evaluation of the amount of timber was accurate; (c) that lesion invalidated the sale of the minor’s interest in the property; (d) that es-toppel, ratification,[4] and the exception of no right of action did not apply to plaintiffs’ claim for relief; (e) that monies paid for the timber deed extension did not constitute partial consideration for additional tree growth specified in the original timber deed and the $2,000.00 did not form part of the original purchase price; and that (f) the trial judge refused to grant defendants’ motion for directed verdict.
Plaintiffs answered the appeal seeking an increase in the award for the price supplement and expert witness fees. Plaintiffs also urged that defendants be denied any award for wrongful issuance of the temporary restraining order.
RESCISSION FOR LESION BEYOND MOIETY
Lesion is the injury suffered by one who does not receive a full equivalent for what he gives in a commutative contract. La. C.C. Art. 1860. The right to rescind the contract or to demand full value on this basis is the remedy granted to the aggrieved party. La.C.C. Arts. 1861 and 1877. In the case of persons of full age, the remedy for lesion is limited to partitions (with a difference in value greater than one-fourth) and sale (with a difference in value greater than one-half) or exchange of immovable property. See La.C.C. Arts. 1861, 1862, 1863, and 1865-1866.
As will be shown hereafter, we conclude that plaintiff Mrs. Fogleman is entitled to lesionary relief, but that plaintiff Perry Fo-gleman is not.
According to the trial judge’s calculations, the sale was lesionary because the price given was less than one-half of the value of the timber at the time of the contract. See La.C.C. Art. 1861(2). We find no error in the trial court’s holding as to the value of the timber tract.
“When there are great variances among appraisals, it is the court’s function to examine each appraisal to determine which is more reasonable. The court is not bound to accept to [sic] reject one expert’s testimony in its entirety to the preference or rejection of another’s. Parts of each expert’s testimony may be accepted when the testimony so accepted is based on proper facts and sound reasoning. Dixie Electric Membership Corp. v. Guitreau, 302 So.2d 324 (La.App. 1st Cir.1974); State Department of Highways v. Salassi, 244 So.2d 871 (La.App. *957 1st Cir.1971). We think the trial court properly weighed the witnesses’ testimony.”
Bisco v. Middleton, 383 So.2d 1047, 1049 (La.App. 1st Cir.1980).
Since the purchase price was less than one-half of the value placed on the property by the trial court, plaintiff co-owner Mrs. Fogleman is entitled to relief for lesion beyond moiety.
Mrs. Fogleman’s actions of: (a) stating that the price of $17,000.00 was fair and reasonable in her capacity as tutrix; (b) executing the timber deed on her behalf; and (c) later accepting $2,000.00 for the timber deed extension do not preclude her from questioning the validity of the sale involved herein. La.C.C. Art. 2589 provides for the right to demand rescission of the sale of an immovable for lesion beyond moiety although the vendor expressly waived or abandoned such right.[5] Therefore, Mrs. Fogleman’s execution of the extension agreement and acceptance of $2,000.00 from defendants do not constitute a ratification of the original contract which would effectively estop her from challenging the sale. The trial court was correct in its refusal to apply the doctrine of estoppel. Even though, as noted by the trial judge, the extension agreement was valid and not procured by fraud, the money paid for the extension agreement would not be considered price-related. Rather it involves a time factor only. Since there was no transfer of any object in the extension agreement, there was no sale and no price modification. Hence, that $2,000.00 is not to be included in the purchase price for the purposes of determining lesion.
Additionally, the trial court was correct in refusing to grant defendants’ motion for directed verdict because Mrs. Fogleman had shown a right to relief based upon the facts and the law. A trial judge has much discretion in determining whether a motion for directed verdict should be granted. La. C.C.P. Art. 1810; Burrell v. Kirkpatrick, 410 So.2d 1255 (La.App. 3rd Cir.1982). Therefore we find no errpr on the part of the trial judge as to Mrs. Fogleman’s claim. However, the trial judge erred in his determination of whether lesion invalidates the sale of the minor’s interest in the immovable property.
RESCISSION FOR LESION BEYOND MOIETY NOT AVAILABLE
Although relief against lesion is granted more generally in the case of minors according to La.C.C. Arts. 1864 and 1865,[6] these Articles must be construed in pari materia with other laws concerning lesion. La.C.C. Art. 17. Article 1867 states that minors are relieved of lesion with the exception provided for in Articles 1868 and 1869.
La.C.C. Art. 1869 provides:
“No lesion whatever, even in the case of minors, can invalidate judicial sales, or sales of an insolvent’s property made by syndics or other trustees. Sales of property belonging to successions or minors, directed or authorized by courts, are judicial sales under this provision.”
Further reinforcing this exception is La. C.C. Art. 2594, which states:
“Rescission for lesion beyond moiety is not granted against sales of movables and produce, nor when rights to a succession have been sold to a stranger, nor in matter of transfer of credits, nor against sales of immovable property made by virtue of any decree or process of a court of justice.”
These Code provisions must be given their plain textual meaning. La.C.C. Art. 13.
*958 ROMAN AND FRENCH LAW — AN HISTORICAL BACKGROUND
A brief history of lesion is necessary to determine the applicability of La.C.C. Art. 1869 to the case sub judice. The right to rescind a contract or to demand full value for a lesionary sale originated in ancient Roman law. The right of action, laesio enormus, codified in the Code of Justinian, was designed to protect the poor against the potentiores.[7]
An examination of the doctrinal writings of the French Civil Code reveals that simple lesion confers the special personal privilege on minors to rescind various agreements. However, at French law, the right to a remedy due to simple lesion is not available against obligations which the tutor has validly undertaken in his name, i.e., within the limit of his authority, and in appropriate cases, with observance of the formalities prescribed by law.[8] The commentators further maintain that rescission from lesion involves only obligations assumed by minors themselves. See Code Civil Art. 1305. Aubrey and Rau suggest that if unemanci-pated minors were granted an action in rescission against obligations their tutor has validly consented to, the result would be improvident legislative interpretation because the tutor as legal mandatory of this minor is charged with the duty to represent the minor in all acts of civil life and should be in a position to oblige in all cases where he does not exceed the limits of his mandate. See Code Civil Arts. 45 and 1998(2).[9] Therefore, obligations which required authorization of the tutor which were validly contracted are not subject to lesion. Nor is an emancipated minor accorded the right to attack an obligation by an action in rescission which the minor had the right to undertake alone. In effect, the minor is considered (“reputed”) to be a major for the purpose of these articles. Additionally, obligations which ’ require the assistance of tutors (or curators) and were actually contracted with that assistance are not subject to attack on account of lesion. It follows that when the formalities prescribed by law are observed by the tutor or emancipated minor, “the obligations resulting from these acts are no more subject to attack than if they were made by a person enjoying the full exercise of his civil rights.” See Code Civil Articles 1314 and 463.[10] “Thus, on the one hand, these obligations cannot be attacked by an action in nullity. This proposition is indisputable and has never been contested. On the other hand, these obligations cannot be attacked by an action in rescission.”[11]
It is established that an action for rescission of a contract due to lesion beyond moiety is not a general cause. Another article of the French Civil Code reinforces the explanation offered by the commentators. “The legal provisions governing the action in rescission on account of lesion in favor of majors are not susceptible of [judicial] extension. (Article 1313).”[12] Rescission applies “only ‘for certain persons,’ who are minors, and ‘for certain contracts’ namely, partition and the sale of immova-bles. (Article 1118).”[13] The exception to the relief for lesion has been explained thusly:
“In conformity with tradition, rescission is not possible except for sales of immovables. Art. 1674 says so expressly, by stating that the vendor suffers lesion ‘in the price of an immovable.’ And further, such an action is not admitted in *959 every case involving sale of an immovable. In fact an exception should be made in two kinds of sales:

(2) Sales made by Authority of the Court (Art. 1684). The reason for this exception appears to have been based on the guaranties which this kind of sale offers because of its publicity. ‘The just price of things,’ said Pothier ‘is the price at which they can be sold.’ Furthermore when the auction has not produced favorable results, there is a special proceeding, the ‘re-auction of the sixth,’ which permits raising the price of the adjudication (Art. 708, C.Proc.Civil). To annul the sale and to proceed to a new adjudication would augment the expenses considerably, and probably would not give a better result. Art. 1684 reproduces a traditional rule (Pothier, Vente, No. 340).
Furthermore, this exception does not apply to all judicial sales but only those which, according to the law, can only be made by authority of the court. Such are sales upon seizure, sales of property of minors or of interdicts, and sales in case involving the acceptance of a succession under benefit of inventory. (Cass.Req., 7 Nov. 1927, D. 1928.1.43, with the report of M. Pringué). But judicial sales which could just as well have been made privately remain subject to the general rules of law and are rescindable for lesion.” (Emphasis ours).[14]
It is to be noted that according to the provisions of Article 457 of the French Civil Code, the sale of an immovable of a minor can only take place by virtue of a deliberation of a family meeting homologated by the court, regardless of the value of the immovable. The forms of the sale are determined by Article 459. These forms serve as models for all voluntary sales made judicially. See Code Civil Articles 806 and 889; Code Civil Articles 743 and 997.[15] By examining the above-mentioned French Civil Code articles it is apparent that the sale of a minor’s immovable property constitutes a judicial sale. There does not exist at French law any distinction whatsoever between a “public” sale or a “private” sale. The only distinction for alienation of a minor’s immovable property is between a voluntary sale and a forced sale, e.g. (1) a public utility expropriation which dispenses with the family meeting and homologation by the court; the sale is then directly authorized by the court; (2) licitation (sale at auction) of an immovable held in indivisión, when licitation is requested by one of the co-owners of the minor.[16] This procedure guarantees protection of the minor’s interest.
IN LOUISIANA
Similarly, the Louisiana Code of Civil Procedure provides for the protection of the interest of minor children by interposing a court into the process of making contracts on their behalf. These articles replace the Louisiana Civil Code articles which govern the sale of a minor’s immovable property by the tutor. The tutor must file a petition and obtain court approval for any matter affecting a minor’s interest. La.C.C.P. Art. 4271. A tutor may sell or exchange any interest owned by a minor either in its entirety or in indivisión for any purpose when authorized by the court as provided for in La.C.C.P. Art. 4271. See La.C.C.P. Art. 4301.
The redactors of the Louisiana Civil Code also incorporated the .concept embodied in the French Code and doctrine into Article 1869. The language of the article has remained essentially unchanged since its first appearance in the Projet of 1825. The interpretation of the French law is reflected in Article 1869 which states clearly and unambiguously that lesion does not invalidate a judicial sale. For the purposes of this exception, when the sale of a minor’s property has been authorized or decreed by *960 the Court, relief against lesion is not applicable. See also La.C.C. Art. 2594.
Louisiana jurisprudence has upheld this exception. In Levenson v. Chancellor, 68 So.2d 116 (La.App.Orl.1953), the court discussed La.C.C. Art. 1869 and said that “[s]ales of property belonging to successions or minors, directed or authorized by courts are judicial sales.” (Emphasis ours). But see Prestridge v. Humble Oil & Refining Company, 131 So.2d 810 (La.App. 3rd Cir. 1961), which involved the applicability of prescriptive periods to the sale of a minor’s mineral rights. On rehearing, this Court differentiated between a public sale and private sale of a minor’s property for the purposes of applying La.C.C. Art. 3543. The court stated that:
“[although the conveyance in question was made pursuant to order of court, it was a private and not a public sale. Our original opinion herein discusses the origin and purpose of Act 209 of 1932 which provided a procedure for the ‘private sale’ of a minor’s property. Such a conveyance is a private contract and not a sale at public auction made by a sheriff, a licensed auctioneer or other persons authorized by order of the courts of this state to sell at public auction within the meaning of LSA-Civil Code, Article 3543
Prestridge, at 827.
The court in Prestridge limited the distinction between public sales and private sales of a minor’s interest in property for the purposes of prescription only. This distinction does not exist between public and private sales for the purposes of applying Article 1869. In Middle Tennessee Council, Inc., Boy Scouts of America v. Ford, 205 So.2d 867 (La.App. 1st Cir.1967), that court, we respectfully submit, incorrectly applied the Prestridge ruling to the sale of succession property. The First Circuit stated that a private sale is distinct from a judicial sale for the purposes of Article 1869 by erroneously relying upon the rationale of Pres-tridge. Prestridge did not purport to interpret Article 1869, but rather dealt with the preseriptability of an action to nullify or rescind testaments or other acts.[17] Further, the court in Middle Tennessee Council, we again respectfully submit, misconstrued French doctrinal authorities in an effort to draw a line between a public and private sale of a minor’s interest in property. We will not adhere to the holding in Middle Tennessee Council insofar as the reasoning therein establishes a distinction between a public and private sale for the purpose of applying Article 1869. Instead, we choose to' follow the clear legislative directive of Article 1869 which plainly states that lesion cannot invalidate judicial sales, even in the case of minors, and specifically, further provides that court-authorized sales of minors’ property are judicial sales. It is also a matter of policy to preserve the validity of sales made by a tutor under court authorization in accordance with La.C.C.P. Art. 4301.
VALUE OF THE TIMBER
The valuations given by the four expert timber appraisers who testified at trial on behalf of both plaintiffs and defendants for the entirety of the property in question ranged from $27,500.00 to $79,357.00. There is no indication that the trial judge relied upon speculative values to determine the lesionary price. But see Cheramie v. St. Pierre, 382 So.2d 1003 (La.App. 1st Cir. 1980); Peterson v. Herndon, 221 So.2d 615 (La.App. 2nd Cir.1969).
We cannot say that the trial judge committed manifest error when he considered all the information gathered from the timber cruises-(which is a method of classifying and evaluating timber taken from the property), and scale tickets, together with other facts and expert evidence, to reach a conclusion that reconciled the disparity of the price of the timber. The trial judge used a formula based upon testimony given by one of the plaintiffs’ expert forestry consultants to determine the amount of value of the timber, i.e., $37,705.00. He then credited *961 $17,000.00 from the original sale price and awarded plaintiffs $20,705.00 plus costs.
Thus, inasmuch as Mrs. Fogleman owned an individed one-half interest in the timber, she is entitled to a supplement in the purchase price of $10,352.50. See La.C.C. Article 2600, and preceeding articles.
Finally, contrary to plaintiffs’ request via their answer to the appeal, we find no error in the trial judge’s award of attorney fees and costs to defendants for the wrongful issuance of the temporary restraining order in the early stages of this litigation.
DECREE
For the above and foregoing reasons the judgment of the trial court which awarded plaintiffs, Thelma E. Fogleman and Perry H. Fogleman, the sum of TWENTY THOUSAND, SEVEN HUNDRED FIVE AND NO/100 ($20,705.00) DOLLARS is reversed and it is hereby Ordered, Adjudged, and Decreed that there be judgment herein in favor of plaintiff, Thelma E. Fogleman and against defendants, Roy O. Martin Industries, Inc. and Louisiana-Pacific Corporation, in solido in the full sum of TEN THOUSAND, THREE HUNDRED FIFTY-TWO AND 50/ioo ($10,352.50) DOLLARS, together with legal interest from date of judicial demand, January 12, 1981, until paid; it is further Ordered, Adjudged, and Decreed that the suit of plaintiff Perry H. Fogleman is hereby Ordered dismissed; it is further Ordered that all costs at trial are assessed in the proportion of three-fourths (¾) to defendants Roy O. Martin Industries, Inc. and Louisiana-Pacific Corporation, and one-fourth (⅛) to plaintiff, Perry H. Fogleman. The judgment of the district court is affirmed in all other respects.
All costs on appeal are assessed in the proportion of three-fourths (¾) to Roy O. Martin Industries, Inc. and Louisiana-Pacific Corporation and one-fourth (¾⅛) to plaintiff, Perry H. Fogleman.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.

. The timber involved in this dispute was growing on this tract.

. On August 1, 1978, Roy O. Martin Industries, Inc. became a wholly-owned subsidiary of Louisiana-Pacific Corporation, when Louisiana-Pacific acquired 100% of that corporation’s outstanding capital stock.

. La.C.C. Art. 1877 states that in an action brought for lesion “the purchaser may elect either to rescind the sale, or to have it confirmed on paying the full value.” The purpose of this provision is either to return the parties to their status before they entered the contract or to restore the full value to the seller. See La.C.C. Arts. 1878, 2591; Smart v. Bibbins, 109 La. 986, 34 So. 49 (1902). However, if it is not possible to surrender the property, then the buyer must pay the determined balance. See La.C.C. Art. 1880. Here, the timber had already been cut and removed from the property.

. See La.C.C. Art. 1875, which states that:
“A ratification made by a person of full age of any contract made during his minority, cures all defects arising as well from the want of the necessary formalities as from the want of a proper consideration. No action for nullity or lesion can be brought after such ratification.”

. La.C.C. Art. 2589 provides:
“If the vendor has been aggrieved for more than half the value of the immovable estate by him sold, he has the right to demand the rescission of the sale, even in case he had expressly abandoned the right of claiming such rescission, and declared that he gave to the purchaser the surplus of the thing’s value.”

. S. Litvinoff, Obligations § 106 (La.Civ.L.Trea-tise Vol. 6, 1969).

. For a complete discussion of the historical concept of lesion, see Comment, Lesion Beyond Moiety in the Law of Sale, 14 Tul.L.Rev. 249 (1940); 2 M. Planiol, Traité élémentaire de droit civil (An English Translation by the Louisiana Law Institute) Part I, No. 1587, at 879 (11th ed. 1939).

. 4 Aubrey et Rau, Droit Civil Francais, (An English Translation by the Louisiana Law Institute, Yiannopoulos) § 335, at 269 (6th ed. 1942).

. Id. at 269-270 n. 4.

. Id. § 334, at 267.

. Id. at 268 n. 17.

. Id. at 269.

. 2 M. Planiol, supra No. 1586.

. Id. No. 1589 at 880-881.

. 1 M. Planiol, id. Part 2, No. 1919 at 156-157, n. 7 (12th ed. 1942).

. Id. No. 1920 at 157.

. La.C.C. Art. 3542.