302 So.2d 324 (1974)
DIXIE ELECTRIC MEMBERSHIP CORPORATION, Plaintiff-Appellee,
v.
Simon GUITREAU et al., Defendants-Appellants.
No. 9926.
Court of Appeal of Louisiana, First Circuit.
October 14, 1974.
Gordon R. Crawford, Gonzales, for defendants-appellants.
Paul H. Dué, Baton Rouge, for plaintiff-appellee.
Before SARTAIN, ELLIS and de la HOUSSAYE, JJ.
SARTAIN, Judge.
This is an expropriation suit wherein Dixie Electric Membership Corporation *325 (Dixie) proceeding under L.R.S. 12:403 (12) seeks to obtain rights to three parcels of land from a 30.46 acre tract of land owned in indivision by the defendants. On the institution of this litigation Dixie filed in the registry of the court the sum of $9,210.00 as just compensation for the land and damages occasioned by the taking. This sum was withdrawn by the defendants without prejudice and with full reservation to seek a larger sum. The trial judge rendered judgment in favor of the plaintiff and against the defendants in the amount of the sum deposited, from which judgment defendants have appealed. We affirm.
Defendants' property is in the shape of a panhandle and can best be described as follows: The handle itself measures[1] 413 feet front on the east side of Louisiana Highway 16 by a depth between parallel lines of 1,450 feet. The pan portion is basically square and measures 750 feet on the north and south lines by a depth of 1,000 feet. The north line of the handle and the pan portion is one continuous line measuring approximately 2,200 feet.
The property is burdened with two existing servitudes, one in favor of Louisiana Power & Light (LP&L) and the other to Dixie. The LP&L servitude contains 5.05 acres and runs in a generally east-west direction 101 feet south of defendants northeast corner and traverses the entire depth of defendants' property by a width of 100 feet.
Dixie's first servitude is also 100 feet in width and runs in a north-south direction approximately 1000 feet east of defendants' western boundary or Louisiana Highway 16.
Plaintiff seeks three tracts of land, viz: A 67 foot servitude containing 1.70 acres which will parallel the LP&L servitude from the rear of defendants' property to the center of their previous servitude where the latter crosses the LP&L servitude. This tract is referred to in the record as Tract "41". Dixie further seeks, in fee simple, Tract "B" measuring 210.2 feet on its east and west boundaries by 400 feet on its north and south lines, which tract is located at the southwest quadrant where the existing servitudes cross. Tract "B" is to be used for the construction of a substation. The third parcel, referred to as Tract "A", contains .35 acres and measures 20 feet in width by a depth of 751.81 feet and is actually the south 20 feet of the previously existing LP&L servitude. The purpose for the taking of Tract "A" is to permit the construction of a 20 foot road from Highway 16 to the substation site. Dixie agreed at the trial that the strip comprising Tract "A" would be extended in an easterly direction sufficiently to connect with and give defendants access to the lower rear portion of their property. At the time this matter was argued before us, the road had been constructed.
Dixie, defendants, their respective appraisers and counsel have referred to various portions of defendants' property as follows: The 5.12 acres situated north of the existing LP&L servitude is referred to as the northern portion. The 13.47 acres located to the south of Tract "41" is called the rear portion. Tract "B", containing 1.93 acres, is referred to as the substation site. The 3.37 acres, representing the remainder of defendants' frontage and located south of Tract "A" and the existing LP&L servitude, is referred to as the front portion.
Two expert appraisers testified, one for Dixie and another for the defendants. As is often the case, there is considerable difference in their opinions as to the value of the parts taken and severance damages to the remainder.
Mr. James E. Carpenter, testifying on behalf of Dixie, placed a value of $5,200.00 on the land taken and $3,960.00 as severance damages to the remainder, for a total of $9,160.00. He excluded from consideration *326 the northern 5.12 acres because he was of the opinion that this portion of defendants' property is unaffected by the present taking. He then considered the remaining 20.47 acres as consisting of 3.63 acres as the size of the part taken and 16.84 acres as the size of the remainder. The remaining 16.84 acres includes the 3.37 acres and 13.47 acres hereinabove referred to as the front and rear tracts, respectively. By use of the Market Data approach with supporting comparables, he placed a per acre value of $1,580.00 on the 1.93 acres taken in fee simple for the substation at $3,050.00. He assigned a value of $2,150.00 for Tract "41" comprising 1.70 acres representing 80% of a per acre value of $1,580.00. He further testified that the rear 13.47 acre tract had a market value of $980.00 per acre or $13,200.00 before the taking, but because of the installation of the substation and the creation of a second servitude to the north (Tract "41") that damages to the portion amounted to 30% of its total value or $3,960.00. He ascribed no damages to the remaining front portion or 3.37 acres. Mr. Carpenter stressed the fact that the pre-existence of two servitudes crossing defendants' property, both north to south and east to west, considerably lowered its overall value and compelled him to adjust for comparables that he used. He conceded that the highest and best use for those portions of defendants' property that retained road frontage was for rural residential purposes. However, he differed with defendants' appraiser and stated that the highest and best use for the rear 13.47 acres was for agricultural and/or timber purposes. The record reflects that this particular tract is now devoted exclusively to the growing of timber.
Mr. C. C. Book, testifying for the defendants, stated that the highest and best use for the 30.46 acre tract is for the development of rural residential homesites in varying sizes of two to four acres by extending a road from Louisiana Highway No. 16 eastward to the rear portion which is now rendered virtually impossible by the taking in fee simple of Tract "B" and the construction thereon of an electrical substation. He also used the market data approach with cited comparables. He placed a before the taking land value on defendants' entire 30.46 acres of $54,797.00 broken down as follows: The northern 5.12 acres at $2,100.00 an acre or $10,750.00; the existing Louisiana Power & Light servitude of 5.05 acres at $210.00 an acre or $1,060.00; and, the south 20.47 acres at $2,100.00 an acre or $42,987.00. From this he subtracted the sum of $6,302.00 representing the value of the three tracts being expropriated herein. For the purposes of this computation he placed a value of $73.50 on Tract "A"; .35 acres at $210.00 per acre; on Tract "B" (substation) .56 acres (servitude) at $210.00 or $117.50; and 1.38 acres (new) at $2,100.00 an acre or $2,898.00; and Tract 41 (servitude) 1.70 acres at $2,100.00 an acre × 90% or $3,213.00. Subtracting the $6,202.00 from the value before the taking of $54,797.00, he determined the value of the remainder to be $48,495.00.
To determine the severance damages, Mr. Book figured that the value of defendants' property after the taking was $27,255.00 which he subtracted from the $48,495.00, thus leaving $21,240.00 as severance damages. By adding the value of the part taken and severance damages, he concluded that defendants should be compensated in the total amount of $27,542.00.
Hence, one expert placed total compensation at $9,160.00 and the other expert concluded that total compensation should be in the amount of $27,542.00. We are not favored with oral or written reasons for the trial judge's determination that defendants were entitled to the lower sum. Accordingly, we have examined the record very carefully to determine whether the conclusion reached by the trial judge is manifestly erroneous as urged by the defendants.
It is not unusual for there to be great variances on the part of appraisers with respect to a given piece of property. *327 When such is the case it is the court's function to examine each appraisal and to determine which is more reasonable and logical. The court is not bound to accept or reject one expert's testimony in its entirety to the preference or rejection of another. Parts of testimony of each expert may be accepted by the court when, in its opinion, the testimony so accepted is based on proper facts and sound reasoning.
An examination of the record in its entirety satsifies us that the trial judge did not commit manifest error in accepting the testimony and relying upon the opinion evidence of Mr. James E. Carpenter. The major difference in the testimony of the two experts is that Mr. Book concluded that the rear 13.47 acres had suffered a diminution in value from the $2,100.00 per acre he generally ascribed to the tract as a whole to $500.00 per acre resulting in damages approximating 75% of its true value. Mr. Carpenter was of the opinion that this same 13.47 acres suffered damages amounting to 30%. We think this latter figure is more reasonable and gives greater consideration to the presence of existing servitudes which had the effect of dividing the property even before the present taking. Prior to this litigation or in the absence of it, if defendants were to develop this 13.47 acres, they would still have to cross one or both of the pre-existing servitudes. Additionally, Mr. Carpenter was of the opinion that he saw no demand in the reasonable foreseeable future for a subdivision such as proposed by the defendants. The record itself does not contain any evidence that defendants contemplated such plans or had given consideration to any development of their property.
The remaining issue deals with defendants' contention that the trial judge erred in failing to grant them judgment in the amount of $1,000.00 as expert witness fees for Mr. Book's investigation, appraisals and appearance in the court. Dixie urges that this contention is without merit and cites L.R.S. 19:12 which provides as follows:
"If a tender is made of the true value of the property to the owner thereof, before proceeding to a forced expropriation, the costs of the expropriation proceedings shall be paid by the owner."
Mr. John C. Judice, right of way coordinator for Dixie, testified that prior to the institution of this litigation he walked the property with Mr. Simon Guitreau, one of the defendants, and tendered to him the sum of Mr. Carpenter's appraisal. This offer was refused by Mr. Guitreau and his sister. Testimony relative to the tender and refusal remains unrefuted. It is clear that the provisions of L.R.S. 19:12 are applicable and preclude defendants' right to claim expert witness fees as additional costs. State, Through Dept. of Hwys. v. Henderson Prop., Inc., 264 So.2d 348 (1st La.App., 1972).
Accordingly, for the above reasons, the judgment of the district court is affirmed at defendants-appellants' costs.
Affirmed.
NOTES
[1] Fractional feet omitted.